### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| HOUSTON POLICE OFFICERS' UNION, individually and on behalf of all others similarly situated, §§§§ | |
| *Plaintiff,* § | Civil Action No. 4:24-cv-478 |
| vs. §§ | JURY TRIAL DEMANDED |
| KROGER TEXAS L.P., §§ | |
| *Defendant.* § | |

### PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

Plaintiff Houston Police Officers' Union, individually and on behalf all others similarly situated, by his undersigned attorneys, sues Defendant Kroger Texas L.P. seeking damages, restitution, and injunctive relief for a Class, defined below, concerning its sale of fraudulent VISA Gift Cards. Plaintiff alleges below upon information and belief, except as to his own actions, the investigation of his counsel, and facts that are a matter of public record.

Based on Plaintiff's experience with the gift cards, Kroger Texas L.P.'s insufficient explanation, and public complaints, Plaintiff believes further substantial evidentiary support will be produced after a reasonable opportunity for discovery. Many facts supporting these allegations are known only to Defendant or are exclusively within its control.

### I.      NATURE OF THE ACTION

1.      Each year, people in the United States load more than a trillion dollars onto prepaid cards.[1] The cards are popular gifts, often given as an alternative to cash. They are also used by

---

[1] James Wood, *Prepaid cards market expected to exceed $5.5 trillion dollars by 2028*, Payments Industry Intelligence, Nov. 30, 2021, available at https://www.paymentscardsandmobile.com/prepaid-cards-market-expected-to-exceed-5-5-trillion-dollars-by-2028.

many without access to a credit cards or traditional bank accounts to pay bills, make online purchases, and pay for transactions that are difficult or impossible to complete with cash. As with traditional bank deposit accounts accessible through bank debit cards, consumers rightfully expect the money they put on prepaid cards to be available to spend when the card is used.

2.      This is a class action lawsuit against a company selling such prepaid cards—in the form of VISA Gift Cards—that, upon use, did not have the money purchasers added to the cards. Plaintiff and others similarly situated discovered, often when using their VISA Gift Cards for the first time, the money paid for and added to those cards was gone and the balance was $0, despite no other use of the card. They bought their cards from Kroger Texas L.P. ("Kroger" or "Defendant"), which claims the lack of funds in the VISA Gift Cards it sold is not its fault. It blames third parties' fraud, in the form of card draining, explained below, for Plaintiff and other consumers' financial losses, while foisting all costs of said fraud onto its innocent customers.

3.      Kroger sold VISA Gift Cards that did not have the characteristics, uses, or benefits advertised or promoted. Either through reckless incompetence or malice, Kroger failed to secure the VISA Gift Cards in a location alleged third parties could not steal the cards' information them before sale. Hundreds of consumers have reported remarkably similar experiences of buying or receiving a VISA Gift Card, attempting to use it to pay, having the card declined for insufficient funds, and then learning the funds were spent by someone else. This is all without the consumer's permission, and before they ever had a chance to use the card. Consumers have reported these experiences to news media throughout the country and on many online review and consumer complaint websites.

4.      Kroger's insufficient security is the direct cause of the theft of money from its VISA Gift Cards through a practice known as "card draining"—unless the fault lies internally with

Kroger. Its lax security allows easy access to the cards, and there is lack of other protocols that prevent anyone but the rightful cardholder from making purchases with a VISA Gift Card.

5.      Despite Kroger having known for years that its own lax security led to many card-draining incidents, it has not sufficiently improved its own security, the cards' packaging, or implemented other changes to prevent those losses. As the direct result of Defendant's years-long negligence, numerous consumers and gift recipients have been needlessly subjected to card draining.

6.      This action is brought on behalf of a Class consisting of all persons and entities who, like Houston Police Officers' Union, purchased fraudulent VISA Gift Cards from Kroger Texas L.P. that were empty upon the customers or a gift recipients' first use despite paying full price, from February 7, 2022 through the original filing date of this suit, February 7, 2024, inclusive ("Class"). The term 'use' above includes the traditional meaning and any attempt by the customer to share the VISA Gift Card's information or have someone else use the card in any legitimate way. This action seeks to recover damages, restitution, and injunctive relief for Plaintiff and future Class members' claims, which are brought under common law against Kroger Texas L.P. for selling fraudulent VISA Gift Cards, and for failing to prevent the foreseeable harm to Plaintiff and those similar situated.

7.      Plaintiff on behalf of itself, and all similarly situated consumers, seeks compensatory, injunctive, and rescissory relief, providing rescission and repayment of all money used to buy fraudulent VISA Gift Cards from during the class period, and the right to secure and conserve such funds until repayment. For injunctive relief, Plaintiff and the Proposed Class seek changed business practices from Kroger in the form of added low-cost security mechanisms to ensure consumers purchase untampered gift cards.

## II.         PARTIES AND PERSONAL JURISDICTION

8.         Plaintiff Houston Police Officers' Union ("HPOU") is the union established to protect and serve the individual police men and women who protect and serve the people of Houston. It may be contacted through the undersigned, Ellzey & Associates, PLLC.

9.         Defendant Kroger Texas L.P. is registered as an Ohio Limited Partnership with a mailing address at PO Box 305103, Nashville, TN 37230-5103, that acts as a corporation, and conducts business in Texas. It can be served with process by serving its registered agent, Corporation Service Company d/b/a/ CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620 Austin, Texas 78701, or wherever it may be found.

10.         The Court has personal jurisdiction over Defendant because it conducts business and maintains operations in this District, is an entity who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11.         Whenever this Complaint refers to any act of "Defendant," such allegation shall be deemed to mean Defendant Kroger did the acts alleged in the complaint through its officers, directors, agents, employees, or representatives while they were acting within the actual or ostensible scope of their authority.

## III.         SUBJECT MATTER JURISDICTION AND VENUE

12.         This Court has original jurisdiction of this action under 28 U.S.C. § 1332.  This controversy is between citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Further, the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which there are more than 100 Class members, members of the Class are citizens of a State different from

Defendant and a Class member foreign state or a citizen or subject of a foreign state and Defendant is a citizen of a state. 28 U.S.C.A. § 1332(d)(2)(A-B). The Class alleged is likely to have greater than $5,000,000 in damages, as pleaded *infra*, and include members who are foreign state citizens purchasing fraudulent VISA Gift Cards from Defendant, which is registered as an Ohio-based limited partnership.

13.     Venue in this Court is proper under 28 U.S.C. § 1391(b). The claims asserted here arose in this district; a substantial part of the activities, conduct, or damages giving rise to the claims occurred in this district; Defendant has substantial contacts with this district; and Defendant has received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect in this District.

## IV.     MISNOMER / ALTER EGO

14.     In the event any party is misnamed or are not included here, it is Plaintiff's contention that such was a "misidentification," "misnomer," or such parties are "alter egos" of parties named here. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## V.     PRINCIPAL-AGENT LIABILITY

15.     All allegations here of acts or omissions by Defendant include, but are not limited to, acts and omissions of Defendant's officers, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice-principals, partners, agents, servants, and owners. Plaintiff alleges that such acts and omissions were committed or made with express or implied authority of Defendant or were ratified or otherwise approved by Defendant; or otherwise, that such acts or omissions were made in the routine, normal course of the actor's employment or agency, and within the scope of the agency or employment.

## VI.      FACTUAL ALLEGATIONS

16.      Over the past decade, numerous cardholders have had their money unsuspectingly stolen from their VISA Gift Cards purchased at Defendant's Kroger locations.[2] These losses result from Defendant's insufficient security to protect its VISA Gift Cards that allows third parties to walk in and scan the cards' numbers. Armed with a card's numbers, thieves can drain the card of value before a cardholder could even use it. The money on a VISA Gift Card is accessible—to rightful owners or anyone else with the card's information—without a PIN or any registration process that protects against fraudulent transactions.

17.      Defendant, which has known about rampant card-draining of its VISA Gift Cards for years, has still failed to prevent the practice by sufficiently improving its security to protect its consumers from fraud.

18.      One such consumer, Houston Police Officers' Union ("HPOU") purchased 4 VISA Gift Cards intended as giveaways to clients and customers on August 3, 2023, from Defendant at its 1440 Studemont St, Houston, TX 77007 Kroger location, shown below:

---

[2] The Kroger Co., *Your guide to common consumer scams*, Money Services at Kroger, available at https://moneyservices.kroger.com/fraud-awareness/common-consumer-scams (Kroger discussing other types of scams related to gift cards); Better Business Bureau, *Complaints Kroger Personal Finance, LLC*, https://www.bbb.org/us/oh/cincinnati/profile/financing/kroger-personal-finance-llc-0292-10004531/complaints (customer complaints about gift card fraud at Kroger stores); John Matarese, *How scammers can drain your gift cards before you get a chance to use them*, KXAN LEX18 (Sept. 17, 2019), available at https://www.lex18.com/money/consumer/dont-waste-your-money/how-scammers-can-drain-your-gift-cards-before-you-get-the-chance-to-use-them (discussing gift card scamming at Kroger stores); James Wood, *Prepaid cards market expected to exceed $5.5 trillion dollars by 2028*, Payments Industry Intelligence (Nov. 30, 2021), available at https://www.paymentscardsandmobile.com/prepaid-cards-market-expected-to-exceed-5-5-trillion-dollars-by-2028/ (discussing various types of prepaid fraud including telephone scams, card swaps, account takeovers, tax frauds, and skimming); Matthew Dietz, *Kentucky man out hundreds of dollars after falling victim to gift card scam*, KXAN WLWT5 (Oct. 18, 2023), available at https://www.wlwt.com/article/kentucky-man-victim-kroger-gift-card-scam/45575325 (discussing credit card scams at Kroger); Jacob Willeford, *OUT OF LUCK Customers slam Kroger's gift card policy saying they're 'disappointed' after losing $100 but securing the card is simple*, The U.S. Sun (Oct. 9, 2023), available at https://www.the-sun.com/money/9285874/customers-slam-krogers-gift-card-policy-securing (discussing VISA gift card scams at Kroger and ways to prevent the fraud); Ostermann, *Kroger VGC Fraud/Scam is Worse Than We Thought – Very Elegant Plan*, Miles to Memories (May 17, 2019), available at https://milestomemories.com/kroger-vgc-fraud-scam-is-worse-than-we-thought (discussing VISA gift card fraud at Kroger stores).



19.     Yet upon attempting to use these cards, HPOU discovered the cards had only $2 remaining on the balances, meaning the cards were illicitly drained. That was confirmed upon checking the VISA Gift Cards' activity reports online, two of which are copied below, showing purchases from Amazon costing $98—purchases Plaintiff or its gift recipients did not make. These reports are the type of evidence that can show the purchaser or gift recipient did not use their card:



20.     Upon visiting the Kroger location where the VISA Gift Cards were purchased,

HPOU learned of the alleged scam involving the VISA Gift Cards. Another possibility is that Defendant is just stealing the money used to buy its fraudulent VISA Gift Cards. Either way, the result is unacceptable for Plaintiff and other customers.

21.     Defendant claims the cause is an alleged scam being perpetuated on Kroger. HPOU's president, Douglas Griffith, went to the Kroger location HPOU purchased their VISA Gift Cards from and spoke with one of Defendant's customer service employees. Kroger's employee claimed there are third parties who walk into the store, scan the VISA Gift Cards digital information, and set a computer program that monitors for when balances are loaded onto the VISA Gift Cards at the time of their purchase. Upon information and belief, once the VISA Gift Cards have a balance, the program eventually drains the gift cards by purchasing products—which means its traceable in Defendant's records—before the rightful purchasers could use the gift cards. This also meshes with the information provided in the webpages cited in Footnote 2 *supra*. HPOU thinks that may be the case or it could be an inside job. Again, same result either way.

22.     Defendant sells VISA Gift Cards in sections of its stores with other gift cards that are in no way protected.



23.     Despite Defendant's awareness of this alleged security issue that has led to potentially thousands of defrauded customers, Defendant denies liability and refuse to change its practices. This is especially odd as Defendant keeps other products behind lock and key—presumably for the same reasons VISA Gift Cards, and other gift cards, should be behind lock and key too, theft and fraud. Examples of proper security already employed at the Kroger location are shown below for powdered baby formula and tobacco products:







24.     Defendant is a sophisticated, successful business entity with the awareness of the issue, the capital to prevent it, and the unilateral ability resolve it. Instead, Defendant disregarded the rights of Plaintiff and its other customers by, among other things, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to protect its VISA Gift Cards against unauthorized tampering; failing to take adequate and reasonable measures to protect Plaintiff and its other customers from an alleged fraud that was known to Defendant; failing to take standard and reasonably available steps to prevent the alleged fraud; and failing to refund Plaintiff and Class Members. In addition, Defendant and its employees failed to properly monitor the VISA Gift Cards to prevent tampering. Had Defendant properly monitored its property, it could have prevented the fraud. Plaintiff's damages resulted from a combination of insufficiencies that demonstrate Defendant's disregarded safety procedures to protect its consumers.

25.     The damages suffered by Plaintiff and those similarly situated, for which they deserve redress, resulted from Defendant's failure to implement adequate and reasonable security

procedures and protocols necessary to protect its VISA Gift Cards before purchase, failure to protect Plaintiff and its other customers from buying fraudulent VISA Gift Cards, and failure to redress Plaintiff and other customers' complaints of fraud.

26.     Plaintiff alleges that Defendant acted with scienter in connection with his claims. Upon information and belief, the mechanism of the gift card fraud and potential for consumer fraud were known risks to Defendant, and thus Defendant was on notice that failing to take steps necessary to secure its VISA Gift Cards from those risks left that property in a dangerous condition.

27.     For these reasons, Plaintiff on behalf of himself, and all similarly situated consumers, seeks compensatory, injunctive, and rescissory relief, providing rescission and repayment of all money used to buy VISA Gift Cards from Defendant during the class period, and the right to secure and conserve such funds until repayment.

28.     Accordingly, Plaintiff sues Defendant seeking redress for its improper and unlawful conduct, and asserting claims for: (i) negligence, (ii) breach of implied contract, and (iii) unjust enrichment.

### VII.        CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action under Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure on behalf of a class tentatively defined as:

GIFT CARD CLASS:

**All persons and entities who purchased 1 or more VISA Gift Cards from Kroger Texas L.P. and the card was found to be empty upon first use despite the purchaser paying full price, from June February 7, 2022 through the original filing date of this suit, February 7, 2024, inclusive.**

30.     The term 'use' above includes the traditional meaning and any attempt by the customer to share the VISA Gift Card's information or have someone else use the card in any legitimate way. Excluded from the class definition are any employees, officers, directors of

Defendant, and attorneys appearing here, and any judge assigned to hear this action. Plaintiff reserves the right to modify this class definition as he obtains relevant information.

31.     The proposed class can be identified through Defendant's records, including receipts, use of card date, and customer complaints, as well as publicly available data, among other information. Such data suggests there may be hundreds or thousands of potential victims based on publicly available complaints. Accordingly, the number of Putative Gift Card Class Members is believed to be in the thousands, rendering the class so numerous that individual joinder of all class members is impracticable.

32.     Plaintiff is a member of the proposed class.

**<u>Commonality</u>**

33.     There are questions of fact common to the Putative Gift Card Class, and those questions predominate over questions affecting any individual Putative Gift Card Class Member. Common questions of fact include but are not limited to:

      a.     Whether Defendant intentionally, willfully, recklessly, or negligently failed to take adequate and reasonable measures to protect its VISA Gift Cards against unauthorized tempering;

      b.     Whether Defendant intentionally, willfully, recklessly, or negligently failed to take adequate and reasonable measures to protect Plaintiff and its other customers from an alleged fraud already known by Defendant;

      c.     Whether Defendant intentionally, willfully, recklessly, or negligently failed to take adequate and reasonable measures to prevent the alleged fraud;

      d.     Whether Defendant intentionally, willfully, recklessly, or negligently failed to take adequate and reasonable measures to refund Plaintiff and Class

Members;

e.      Whether Defendant intentionally, willfully, recklessly, or negligently failed to take adequate and reasonable measures to properly monitor its VISA Gift Cards to prevent tampering;

f.      Whether Defendant fraudulently promoted future products or services, or futures in products or services—products or services Defendant knew would not exist as promoted or at all—causing consumers like those in the Putative Gift Card Class to buy said VISA Gift Card products;

g.      Whether Defendant violated its agreement(s) to deliver functional products and breached its agreement(s);

h.      Whether Defendant knew the VISA Gift Cards would not be functional when they claimed it would be or was, and made false representations despite that knowledge;

i.      Whether Defendant had a duty to provide functional products to its consumers, and if Defendant violated that duty;

j.      Whether Defendant failed to deliver on its promises to consumers to provide products as advertised or promoted;

k.      Whether Defendant made any false representations to its consumers, and whether Defendant knew those representations to be false, or whether those assertions were made recklessly and without adequate investigation of its truth or falsity;

l.      Whether Defendant received revenues from a fraudulent venture, including an inside job, and the amount of those revenues; and

      m.      Whether Defendant had a duty to not protect its consumers, and whether Defendant violated that duty.

34.     There are questions of law common to the Putative Gift Card Class, and those questions predominate over questions affecting any individual Putative Gift Card Class Member. Common questions of law include but are not limited to:

      a.      Whether Defendant's conduct in (1) knowingly failing to protect its VISA Gift Card from tempering, (2) failing to provide a functional VISA Gift Card product, and (3) selling VISA Gift Cards without proper regard for customers, constitute acts of negligence or fraud;

      b.      Whether Defendant's conduct common to the Putative Gift Card Class has resulted or will result in Defendant being enriched at the expense of Putative Gift Card Class Members, or in Defendant retaining a benefit to the detriment and loss of Putative Gift Card Class Members, in frustration of the fundamental principles of justice, equity, and good conscience, and thus constitutes unjust enrichment;

      c.      Whether Plaintiff and Class Members suffered legally cognizable damages from Defendant's misconduct;

      d.      Whether Defendant was unjustly enriched;

      e.      Whether Defendant's conduct common to the Putative Gift Card Class establishes willfulness, malice, or recklessness, or whether Defendant proceeded with conscious disregard for the rights of others, therefore entitling Putative Gift Card Class Members to punitive damages; and

      f.      Whether Plaintiff and Class Members are entitled to damages, civil

penalties, punitive damages, or injunctive relief.

**Typicality**

35.       Typicality. *Fed. R. Civ. P. 23(a)(3)*. Plaintiff's claims are typical of the claims of the Putative Gift Card Class Members. Plaintiff would only seek individual or actual damages if class certification is denied. And Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other Members of the Putative Gift Card Class.

**Adequacy**

36.       Adequacy. *Fed. R. Civ. P. 23(a)(4)*. Plaintiff is an adequate representative of the proposed Putative Gift Card Class because its interests coincide with and are not antagonistic to, the interests of the other Members of the Putative Gift Card Class it seeks to represent; it has retained counsel competent and experienced in such litigation; and it intends to prosecute this action vigorously. Plaintiff and its Counsel will fairly and adequately protect the interests of the Members of the Putative Gift Card Class.

**Superiority**

37.       Superiority. *Fed. R. Civ. P. 23(b)(3)*. Questions of law and fact common to the Putative Gift Card Class Members predominate over questions affecting only individual Members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Liability will be determined based on a common set of facts and legal theories. Willfulness and Scienter will be determined based on Defendant's conduct and knowledge, not upon the effect of Defendant's conduct on the Putative Gift Card Class Members.

38.       The damages sought by each Member are such that individual prosecution for a majority of the Members would prove burdensome and expensive given the complex and extensive litigation caused by Defendant's conduct. It would also be burdensome and expensive on the

Federal Judiciary System to resolve multiple litigations based on the same facts as a single class action. It would be almost impossible for Members of the Putative Gift Card Class individually to redress effectively the wrongs done to them. Even if the Members of the Putative Gift Card Class themselves could afford such individual litigation, it would still be an unnecessary burden on the courts.

39.     Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve many individual claims based on a single set of proof in one case.

## VIII.     CAUSES OF ACTION

### FIRST COUNT
### NEGLIGENCE
**(On Behalf of Plaintiff and All Class Members)**

40.     Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

41.     Defendant made available for purchase, and sold to Plaintiff, 4 VISA Gift Cards issued by US Bank National Association—for which it paid the full price. After attempting to use said VISA Gift Cards, Plaintiff discovered the gift cards did not have funds on them. Upon questioning, Defendant denied liability and blamed alleged fraudsters, discussed above.

42.     Defendant is a sophisticated, successful corporate entity with awareness of the issue, the capital to prevent it, and the unilateral ability resolve it.

43.     Defendant owed a duty of care to Plaintiff and Class Members to provide functional products that are untampered, as promoted, and to ensure that they adequately protected its customers like Plaintiff from being damaged and its products from being tampered with.

44.     Defendant's duty of care to use reasonable security measures arose because of its knowledge of the issue and failure prevent it while it profited from fraud at its customers', like the Houston Police Officers' Union, expense. *See* n.2 *supra*. Defendant could ensure that its security protocols and staff were enough to protect against the foreseeable risk of harm to Class Members from such a fraud.

45.     Defendant's duty to use reasonable security measures also arose because Defendant is bound by industry standards to provide products as advertised or promoted.

46.     Defendant breached its duty, and thus was negligent, by failing to use reasonable measures to its VISA Gift Cards from tampering or protect its customers from fraud. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

  a.   Failing to take adequate and reasonable measures to protect its VISA Gift Cards against unauthorized tempering;

  b.   Failing to take adequate and reasonable measures to protect Plaintiff and its other customers from an alleged, but known by Defendant, fraud;

  c.   Failing to take adequate and reasonable measures to prevent the alleged fraud;

  d.   Failing to take adequate and reasonable measures to refund Plaintiff and Class Members;

  e.   Failing to take adequate and reasonable measures to properly monitor the VISA Gift Cards to prevent tampering;

  f.   Failing to alert customers if the VISA Gift Cards would not be functional when they claimed it would be or was, and made false representations

despite that knowledge;

g.      Failing provide functional products to its consumers;

h.      Failing to deliver on its promises to provide functional products; and

i.      Failing to detect timely that Class Members' VISA Gift Cards had been compromised;

47.     It was foreseeable that Defendant's failures to use reasonable measures to protect Class Members' VISA Gift Cards would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of fraud. *See* n.2 *supra*.

48.     It was therefore foreseeable that the failure to adequately safeguard Class Members' VISA Gift Cards would result in one or more types of injuries to Class Members.

49.     Plaintiff and Class Members are entitled to compensatory and consequential damages suffered because of Defendant's failures to protect its VISA Gift Cards.

50.     Defendant's negligent conduct is ongoing, in that it still sells its VISA Gift Cards in an unsafe and unsecure manner.

51.      Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its security systems and monitoring procedures; and (ii) submit to future annual audits of those systems and monitoring procedures.

### SECOND COUNT
### BREACH OF CONTRACT
### (On Behalf of Plaintiff and All Class Members)

52.     Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

53.     When Plaintiff and Class Members bought VISA Gift Cards from Defendant in exchange for money, they entered contracts with Defendant wherein Defendant agreed to provide functional products.

54.     Defendant offered and invited Class Members to buy VISA Gift Cards as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and bought VISA Gift Cards from them.

55.     In entering such contracts, Plaintiff and Class Members reasonably believed and expected that Defendant would provide functional productions that were consistent with industry standards. Plaintiff and Class Members would not have bought VISA Gift Cards from Defendant in the absence of such contracts, yet Defendant failed to provide functional products.

56.     Plaintiff and Class Members paid money to Defendant with the reasonable belief and expectation that Defendant would use part of those funds to provide functional productions, by preventing them from tampering with security. Defendant failed to do so.

57.     Plaintiff and Class Members fully and adequately performed its obligations under the implied contracts with Defendant.

58.     Defendant breached its contracts with Plaintiff and Class Members by failing to safeguard VISA Gift Cards and provide functional products.

59.     As a direct and proximate result of Defendant's breach of the contracts, Class Members sustained damages as alleged herein, including the loss of the benefit of the bargain.

60.     Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered because of the breach.

61.     Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its security systems and monitoring procedures; and (ii) submit to future annual audits of those systems and monitoring procedures.

## THIRD COUNT
### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and All Class Members)

62.     Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

Plaintiff brings this claim individually and on behalf of all Class Members. This count is plead in the alternative to the breach of contract count above.

63.     Upon information and belief, Defendant funds its security measures entirely from its general revenue, including payments made by or on behalf of Plaintiff and the Class Members.

64.     As such, a portion of the payments made by or on behalf of Plaintiff and the Class Members is to be used to provide a reasonable level of security, and the amount of the portion of each payment made that is allocated to security is known to Defendant.

65.     Plaintiff and Class Members conferred a monetary benefit on Defendant. They bought goods and services from Defendant or its agents and in so doing provided Defendant money. In exchange, Plaintiff and Class Members should have received from Defendant the goods and services that were the subject of the transaction because those products should have been adequately secured before purchase.

66.     Defendant knew that Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used funds of Plaintiff and Class Members for business purposes.

67.     Defendant enriched themselves by saving the costs it reasonably should have expended on security measures to secure its VISA Gift Cards. Rather than provide a reasonable level of security that would have prevented the fraud, Defendant instead calculated to increase its own profits at the expense of Plaintiff and Class Members by using cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security.

68.     Under the principles of equity and good conscience, Defendant should not be permitted to retain the money rightfully belonging to Plaintiff and Class Members because they

received no value and separately because Defendant failed to implement appropriate management and security measures that are mandated by industry standards or common sense.

69.     Defendant failed to secure its VISA Gift Cards and so did not provide full compensation for the benefit Plaintiff and Class Members provided.

70.     Defendant acquired the funds through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

71.     If Plaintiff and Class Members knew that Defendant had not reasonably secured its VISA Gift Cards, they would not have agreed to provide their funds to Defendant.

72.     Plaintiff and Class Members have no adequate remedy at law.

73.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including, but not limited to, the loss of use of their purchase, lost opportunity costs associated with efforts expended on resolution attempts, and the loss of productivity addressing and attempting to mitigate the actual harm and consequences of Defendant's conduct.

74.     Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's products.

## IX.     DAMAGES

75.     Plaintiff adopts by reference every foregoing paragraph of the stated in this Complaint as if fully and completely set forth here.

76.     Defendant's conduct and actions discussed above proximately caused injury to Plaintiff and Class Members, which resulted in:

        a.     Loss of use damages for assets diminished by Defendant's actions;

b.      Actual damages and treble damages;

c.      Exemplary damages;

d.      Actual damages, including economic damages;

e.      As a direct and proximate result of Defendant's breaches of contracts, Plaintiff sustained damages as alleged here;

f.      Plaintiff and Class Members are entitled to compensatory and consequential damages suffered because of Defendant's actions.

g.      Mental anguish;

h.      Civil penalties;

i.      Prejudgment interest;

j.      Attorney's fees; and

k.      Costs of action.

77.     Plaintiff further seeks unliquidated damages within the jurisdictional limits of this Court.

## X.      PUNITIVE DAMAGES

78.     Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth here.

79.     The wrong done to Plaintiff by Defendant was attended by fraudulent, malicious, intentional, willful, wanton, or reckless conduct that evidenced a conscious disregard for Plaintiff and Class Members' rights. Thus, Plaintiff seeks punitive damages in an amount to be proven at trial.

## XI.      ATTORNEY'S FEES

80.     Every allegation contained in the foregoing paragraphs is realleged as if fully rewritten here.

81.     Plaintiff is entitled to recover reasonable attorney fees and request the attorney's fees be awarded under his breach of contract claims.

## XII.      INCORPORATION OF PARAGRAPHS

82.     Every paragraph in this Complaint is incorporated into every other paragraph.

## XIII.      PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant, awarding relief as follows:

a.     Finding a class action is the most efficient and effective way to resolve the claims against Defendant;

b.     For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained because of Defendant's wrongful conduct;

c.     Holding that the doctrine of unjust enrichment applies and ordering Defendant to pay Plaintiff and Class Members all sums received by Defendant flowing from its illegal and unconscionable activities;

d.     For an award of actual damages, compensatory damages, statutory damages, exemplary damages, and statutory penalties, in an amount to be determined, as allowable by law;

e.     For an award of punitive damages, as allowable by law;

f.     For an award of attorneys' fees and costs, and any other expenses, including expert witness fees;

g.     Pre-and post-judgment interest on any amounts awarded; and

h.     Any other relief that this court may deem just and proper.

Respectfully submitted,

/s/ Jarrett L. Ellzey

**ELLZEY & ASSOCIATES, PLLC**
Jarrett L. Ellzey
Texas Bar No. 24040864
jarrett@ellzeylaw.com
Leigh S. Montgomery
Texas Bar No. 24052214
leigh@ellzeylaw.com
Alexander G. Kykta
Texas Bar No. 24107841
alex@ellzeylaw.com
1105 Milford Street
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455

**ATTORNEY TOM & ASSOCIATES**
Tom Kherkher
Texas Bar No. 24113389
tom@attorneytom.com
5909 West Loop South Suite 525
Houston, Texas 77401
Phone: (855) 866-9467

**ATTORNEYS FOR PLAINTIFF**