UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

```
HOUSTON POLICE OFFICERS'      .    CASE NO. 4:24-CR-478
  UNION,                      .
                             .
           PLAINTIFF,         .
                             .    HOUSTON, TEXAS
           V.                 .    TUESDAY, AUGUST 6, 2024
                             .    10:38 A.M. TO 11:20 A.M.
KROGER TEXAS L.P.,            .
                             .
           DEFENDANT.         .
. . . . . . . . . . . . . . .
```

INITIAL CONFERENCE

BEFORE THE HONORABLE CHARLES ESKRIDGE
UNITED STATES DISTRICT JUDGE

APPEARANCES:                    SEE NEXT PAGE

ELECTRONIC RECORDING OFFICER: CHRISTINA LASLEY

CASE MANAGER:                   JENELLE GONZALEZ

OFFICIAL INTERPETER:            NONE PRESENT

TRANSCRIPTION SERVICE BY:

**TRINITY TRANSCRIPTION SERVICES**
**1081 Main Street**
**Surgoinsville, TN 37873**
**281-782-0802**
battshott@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION


| | | |
|---|---|---|
| HOUSTON POLICE OFFICERS'<br>  UNION, | . | CASE NO. 4:24-CR-478 |
| | . | |
| | . | |
| PLAINTIFF, | . | |
| | . | HOUSTON, TEXAS |
| V. | . | TUESDAY, AUGUST 6, 2024 |
| | . | 10:38 A.M. TO 11:20 A.M. |
| KROGER TEXAS L.P., | . | |
| | . | |
| DEFENDANT. | . | |

. . . . . . . . . . . . . . .


INITIAL CONFERENCE

BEFORE THE HONORABLE CHARLES ESKRIDGE
UNITED STATES DISTRICT JUDGE

Appearances:

**For the PLAINTIFF:**          **JARRETT L. ELLZEY, ESQ.**
                                Hughes Ellzey LLP
                                1105 Milford Street
                                Houston, TX 77006


**For the DEFENDANT:**          **VALERIE A. HENDERSON, ESQ.**
                                **BRUCE A. MCMULLEN, ESQ.**
                                **MARY W. TULLIS, ESQ.**
                                Baker, Donelson, Bearman,
                                  Caldwell & Berkowitz, PC
                                1301 McKinney Street, Suite 3700
                                Houston, TX 77010


Transcription Service:          Cheryl L. Battaglia
                                Trinity Transcription Services
                                1081 Main Street
                                Surgoinsville, TN 37873
                                281-782-0802


TRINITY TRANSCRIPTION SERVICES

1

| | |
|---|---|
| 1 | **Houston, Texas; Tuesday, August 6, 2024; 10:38 a.m.** |
| 2 | **UNITED STATES MARSHAL:**  All rise. |
| 3 | The United States District Court for the Southern |
| 4 | District of Texas is now in session.  The Honorable Charles |
| 5 | Eskridge presiding.  God save the United States and this |
| 6 | Honorable Court. |
| 7 | **THE COURT:**  Thanks, everyone.  Please be seated. |
| 8 | **(Pause in the proceeding.)** |
| 9 | **THE COURT:**  All right.  I call for hearing *Civil Case* |
| 10 | *24-478, Houston Police Officers' Union versus Kroger Texas L.P.* |
| 11 | Can I get appearance from counsel, please. |
| 12 | **MR. ELLZEY:**  Good morning, your Honor.  Jarrett |
| 13 | Ellzey on behalf of the Plaintiff. |
| 14 | **THE COURT:**  Thank you. |
| 15 | **MS. HENDERSON:**  Good morning.  Valerie Henderson, |
| 16 | Bruce McMullen, and Mary Tullis on behalf of the Defendant. |
| 17 | **THE COURT:**  Welcome.  Are you lead on this Miss -- |
| 18 | **MS. HENDERSON:**  Yes. |
| 19 | **THE COURT:**  -- Henderson? |
| 20 | **MS. HENDERSON:**  Yes. |
| 21 | **THE COURT:**  Okay.  Thank you. all. |
| 22 | A note before we start.  I'm the miscellaneous judge |
| 23 | this month.  And there is a TRO that's pending that I may need |
| 24 | to step off the bench and take a Zoom to decide whether to |
| 25 | foreclose a -- a more -- to halt a mortgage foreclosure. |

1          I think it's been handled.  But anyways, I may take a

2    brief adjournment for that if necessary.

3          All right.  I have reviewed the materials.  And

4    I -- obviously, I do want to take up the motion.  As to the

5    joint discovery and case management plan, it's an interesting

6    action underlying on all the facts.

7          Is there anything that -- I don't know that I noted

8    anything, disagreements between the parties, other than what's

9    in the pending motions.  Is there anything that we need to

10   address on the joint discovery, case management plan?

11         **MR. ELLZEY:**  Your Honor, there are no disagreements.

12   But I -- I would like to correct what is in the -- the joint

13   discovery, case management plan.

14         I was looking back over it --

15         **THE COURT:**  Sure.

16         **MR. ELLZEY:**  -- and I apologize to the Court

17   for -- for allowing this to get filed without these items in

18   there.

19         With respect to the additional parties --

20         **THE COURT:**  Uh-huh.

21         **MR. ELLZEY:**  -- there may be.  And it -- it's

22   possible that -- that the bank, the underlying bank that funds

23   these cards --

24         **THE COURT:**  Yeah.  Right.

25         **MR. ELLZEY:**  -- could be a party.

3

1        **THE COURT:**  Uh-huh.

2        **MR. ELLZEY:**  So we could -- we could correct the case

3    management plan if necessary.

4        The second is -- is the discovery that's been

5    conducted to date.  Just normally, none would be conducted

6    prior to this hearing.  However, given thee the Court's initial

7    order requiring a class certification motion filed, I believe,

8    it was in September, my firm got busy and we sent out a

9    subpoena to U.S. Bank for Kroger then appeared in the case.

10        **THE COURT:**  Uh-huh.

11        **MR. ELLZEY:**  Questioning the appropriateness of that.

12    But trying to follow the Court's order, we felt like we had to

13    get discovery going.

14        We have not followed-up on that.  U.S. Bank has not

15    answered.  But just wanted to correct the record.  There has

16    been a discovery item completed, but not followed-up on.

17        **THE COURT:**  Have you all been -- so, the completion

18    of discovery related to class certification was end of July.

19    Have you all been undertaking much, if any, discovery on that?

20        **MS. HENDERSON:**  No, your Honor.  And I think that

21    those --

22        **THE COURT:**  All right.

23        **MS. HENDERSON:**  -- deadlines were continued, due to

24    this Motion to Dismiss that's pending.

25        **THE COURT:**  Okay.  And so that's what I was

1   wondering.  Because I was about to do that if it hadn't already

2   been done.  I didn't look back at my prior orders.

3          So has that been stayed?  Because if so, then we'll

4   just reset it.  I'll -- I'll -- I'll tip my hand here on the

5   motion.

6          I think that at the end of the day, there's going to

7   be some repleading allowed.  And then I might get these motions

8   again to decide in a better, and I think you want to correct

9   some things in your -- or update and add things, to your

10  pleading is my sense.

11         And so, that's kind of where -- I -- I want to go

12  through all the issues with you.  But that's kind of where I am

13  at that point, which means we'd hold off, I think, on class

14  certification and discovery.  And I'd reset that later as

15  needed.

16         **MR. ELLZEY:**  I think that's accurate, your Honor.

17  And actually, the first words out of my mouth in the context of

18  a response to their motion was going to be -- or request to the

19  Court, for leave --

20         **THE COURT:**  Uh-huh.

21         **MR. ELLZEY:**  -- you know, to file an amended

22  complaint.  Because your Honor's correct.  There's some -- some

23  items that need to be in there that are not in there.  And some

24  facts need to be added --

25         **THE COURT:**  Okay.

1          **MR. ELLZEY:** -- and refined.

2          However, it is an interesting case.  It's -- it's an

3    atypical narrative.  So it's -- it's difficult to say.  Too

4    busy -- the breach of contract --

5          **THE COURT:**  In -- in what -- in what way?  I see --

6          **MR. ELLZEY:**  Right.

7          **THE COURT:**  Pretty much everything I see, I'm sort of

8    like, well, I've never seen that before.

9          **MR. ELLZEY:**  Right.

10          **THE COURT:**  So --

11          **MR. ELLZEY:**  So, it's -- given what we're up against,

12    I mean, it -- we would -- I don't want to get in a position

13    where I'm doing a lot of guess work --

14          **THE COURT:**  Uh-huh.

15          **MR. ELLZEY:**  -- at the pleading stage.

16          And that's -- that's -- we're kind of in a catch-22

17    here.  Obviously, we have to allege enough facts to support our

18    claims.  We have to bring the proper claims.  I understand

19    that.

20          However, we don't know exactly what happened behind

21    the curtain with respect to the -- the -- the hacking we're

22    alleging, or the -- the way the cards were compromised that

23    led --

24          **THE COURT:**  And this was as to four -- is it four

25    cards that were compromised?

1   **MR. ELLZEY:**  Four cards.  However, we're aware that

2   this is -- it's a broader issue than just the four cards.

3   **THE COURT:**  Sure.

4   **MR. ELLZEY:**  Yes.

5   **THE COURT:**  But as to the Houston Police Officers'

6   Union it was four cards.

7   **MR. ELLZEY:**  Correct, your Honor.

8   **THE COURT:**  A hundred dollars each?

9   **MR. ELLZEY:**  Hundred dollars each.

10  **THE COURT:**  Okay.  And there had been -- I haven't

11  seen anything clear about it.  It seems to me like Kroger has

12  said, have there been refunds?  Or is there -- what's -- what's

13  happened to -- Kroger's not disputing --

14  **(Pause in the proceeding.)**

15  **THE COURT:**  Well, maybe that's not right.  Cause

16  it -- that goes to substances.  I know what the allegations of

17  the complaint are.

18  Does -- but Kroger surely got the cards back into its

19  possession at someone point, and has already looked at them,

20  right?  And -- or looked at its records and they were issued

21  with $100.  And when they were attempted to be used, the money

22  was not there.

23  Is that basically right?

24  **MS. HENDERSON:**  The -- when the cards left Kroger

25  they had the $100 --

7

1          **THE COURT:**  Okay.

2          **MS. HENDERSON:**  -- on each of the cards.

3          As to your first question, your Honor, the -- Kroger

4  offered to replace the cards with new fully-loaded --

5          **THE COURT:**  New cards.

6          **MS. HENDERSON:**  -- cards.

7          **THE COURT:**  Fully-loaded.  Yeah.

8     **(Pause in the proceeding.)**

9          **MR. ELLZEY:**  At -- all --

10         **THE COURT:**  Offered.  Or -- and was that accepted, or

11  was it not?  Or do you know?

12         **MS. HENDERSON:**  It was not accepted to my knowledge.

13         **THE COURT:**  Okay.

14    **(Pause in the proceeding.)**

15         **THE COURT:**  All right.

16    **(Pause in the proceeding.)**

17         **THE COURT:**  Okay.  Um, all right.  So who are the

18  other parties that you might want to bring in?

19         **MR. ELLZEY:**  Possibly U.S. Bank.

20         **THE COURT:**  Is that the one that backs all of these

21  Visa gift cards?

22         **MR. ELLZEY:**  Correct, your Honor.  And -- and

23  discovery would be required before we can make that

24  determination.

25         **THE COURT:**  Why's that?

1     **MR. ELLZEY:**  Well, I -- I -- I'm not exactly sure if

2  they have some responsibility, U.S. Bank has responsibility

3  with respect to -- to the -- to securing the cards, I know.

4     But we're alleging that this like an electronic

5  hack --

6     **THE COURT:**  Right.

7     **MR. ELLZEY:**  -- just so know.

8     While Kroger was in possession, and when -- when the

9  consumer goes to use the card, that's -- whatever

10  is -- is -- devices is placed on that account, card is swiped,

11  the money goes elsewhere.  So the card is emptied.

12     So while the card may leave Studemont Kroger

13  premises, or any other Kroger premises, fully-funded at the

14  time of purchase, the allegation is the money's drained and

15  sent to an account of whoever the pirates are.

16     **THE COURT:**  Sure.

17     Is -- is the hack that it's like something just

18  somebody clever and entirely independent has figured out how to

19  do this?  Or is the supposition that there's something going on

20  inside that knows that -- cause I just don't -- I don't

21  understand how that's happening if it's -- like if I knew

22  anything about computers, that I could go in and look at a Visa

23  gift card and take that number.

24     And then from the outside, know when it's been loaded

25  and how to go get that money.  But that Kroger with its systems

1  and things, is obviously able to do that, and tracking that

2  because it's the one loading the card in the first place.

3          I mean, is your supposition that it's somebody with

4  access to that system that's doing it?

5          MR. ELLZEY:  Somebody with access to the card numbers

6  clearly.  And then what happens beyond that is what -- what

7  we're going to need to determine during discovery.

8          THE COURT:  Uh-huh.

9          MR. ELLZEY:  That's -- it's -- that's the -- that's

10  the issue behind the curtain.

11          THE COURT:  And do you know how -- is this a

12  widespread issue?  And --

13          MR. ELLZEY:  It's personally happened to me four

14  times.  But -- and my family.  But, yes, your Honor.  If

15  you -- if you -- if you do a little digging, and you don't have

16  to dig very deep, it is not --

17          THE COURT:  Well let me say this.  That -- is that

18  vis-à-vis Kroger?  Or is that vis-a-vis -- oh, by the way, for

19  conflicts purposes.  I shopped at Kroger last night.

20          I don't suppose that's a conflict, right?

21          MS. HENDERSON:  I think you're fine, your Honor.

22          THE COURT:  Okay.

23          MS. HENDERSON:  That's for letting us --

24          THE COURT:  Good.

25          MS. HENDERSON:  -- know.

1          **MR. ELLZEY:**  Thank you, your Honor.  No objection.

2          **THE COURT:**  Um, no.  Is it your issue was that Kroger

3  specific?  Or is this just -- it just happened to you like at a

4  Walgreens, or wherever it is that you purchased it?

5          **MR. ELLZEY:**  It's a retail problem.

6          **THE COURT:**  Okay.

7          **MR. ELLZEY:**  It -- it's not a Kroger problem.

8          **THE COURT:**  Interesting.

9          **MR. ELLZEY:**  Unfortunately, this incident involved

10  Kroger.

11          **THE COURT:**  Right.

12          **MR. ELLZEY:**  And -- and additionally --

13          **THE COURT:**  Has your firm --

14          **MR. ELLZEY:**  -- it's at Kroger.

15          **THE COURT:**  Has your firm pursued these -- usually on

16  like doing an ERISA class action right now.  And lots of courts

17  have seen lots of cases like this that started being brought

18  that you're aware of?  Or maybe that your firm is doing?

19          **MR. ELLZEY:**  We -- my firm has not initiated any

20  other cases.

21          I'm a little tiny firm --

22          **THE COURT:**  Okay.

23          **MR. ELLZEY:**  -- on Montrose.  But -- for now,

24  merging.  But you don't need to know.

25          **THE COURT:**  Good.

1          **MR. ELLZEY:**  So, to answer your question, your Honor,

2  there is another case that I'm aware of.  And it involves Visa.

3  It's a Visa card.

4          **THE COURT:**  Right.

5          **MR. ELLZEY:**  But that -- that case is going to be

6  moved into arbitration, based on the information I have and my

7  knowledge of how Visa's terms and conditions work.

8          **THE COURT:**  Well, like the back of whatever the cards

9  say.

10          I mean, do these cards require arbitration?  Is that

11  something that's -- that comes up?  Is that even something that

12  Kroger asserts?  Or is that like a Visa-related issue?

13          Cause you're just sort of like the middle-man on

14  the --

15          **MS. HENDERSON:**  Right, your Honor.

16          **THE COURT:**  -- that issue.

17          **MS. HENDERSON:**  And that -- you're question raises a

18  broader issue that we have with this case as a whole.

19          **THE COURT:**  Yeah.

20          **MS. HENDERSON:**  That the facts as alleged to not

21  connect any bad actions directly to Kroger.

22          He's talking about bringing in U.S. Bank after

23  additional discovery is done to even figure out if U.S. Bank

24  did anything wrong.  There's no facts currently alleged as to

25  what Kroger, if anything, Kroger did wrong.

12

1              As to the arbitration question, that likely is

2     something that goes to the bank, because the -- the cards were

3     banked by U.S. Bank and issued by U.S. Bank.  They just happen

4     to be sold by Kroger and purchased by the Plaintiff at Kroger.

5              **THE COURT:**  Uh-huh.

6              **MS. HENDERSON:**  I think --

7              **THE COURT:**  And are you aware of any other class

8     actions that have been brought -- I'm just saying.  Like once

9     class actions start to get tractions, lots and lots of them are

10    seen.

11             Are you aware of any other courts addressing this

12    particular type of negligence, breach of contract, fraud,

13    whatever rubric it's been brought under?

14             **MS. HENDERSON:**  When we received this case, we looked

15    into that.  And the cases that we found were against the U.S.

16    Banks and the financial institutions --

17             **THE COURT:**  And not against the one --

18             **MS. HENDERSON:**  -- that back the card.

19             **THE COURT:**  -- that was.  Okay.

20             **MS. HENDERSON:**  That's -- that's what we found, your

21    Honor.  Yes.

22        **(Pause in the proceeding.)**

23             **THE COURT:**  Okay.

24             **MR. ELLZEY:**  And, your Honor, if I may.

25             **THE COURT:**  Yeah.

13

1          **MR. ELLZEY:**  The -- the crux of our complaint against

2    Kroger is -- is the foreseeability aspect of this whole

3    problem, right?

4          **THE COURT:**  But what -- what does that mean they

5    should be doing?

6          Because from what I'm hearing about that, is -- I

7    mean, I understand that you don't know what happened or who did

8    it.  But from what I'm hearing is it's more likely, if it's an

9    inside job, it's more likely that it's from U.S. Bank personnel

10   or people that are being allowed access through that, as

11   opposed to through Kroger.

12         And so, I know that you're, you know, kind of

13   shooting at the dark.  And the cards were purchased from

14   Kroger.  But, you know, at the end of the day, it's -- it's

15   hard to say at this point who's responsible.  And I -- I hear

16   what Kroger's saying about it.

17         **MR. ELLZEY:**  I understand.  Our position is Kroger

18   knew, or should have known, about the -- about the issue.  And

19   should have done more to secure the cards.  Okay?

20         So if it turns out, your Honor, that this is a U.S.

21   Bank problem, or a Visa problem, and -- and there's some

22   insider at U.S. Bank that's selling lists of -- of card

23   numbers, Kroger's out in my opinion.

24         **THE COURT:**  Then they're supposed to keep the cards,

25   what, behind plastic cases?

14

1       **MR. ELLZEY:**  Well they do that for their razors and

2  products that --

3               **THE COURT:**  Sure.

4           **MR. ELLZEY:**  -- in -- in a loss prevention context.

5           **THE COURT:**  But that's -- but those are, I mean, but

6  in terms of like, negligence, they do that do avoid shrinkage

7  as in shoplifters coming in and taking those type of like

8  physical things --

9           **MR. ELLZEY:**  Right.

10          **THE COURT:**  -- off the rack.

11      A Visa card that's just on a display rack is

12  worthless.  Nobody's going to take that.  It's only got value

13  once you take it to the register and it gets loaded up with

14  money.

15      So, I mean, they're going to be saying well, we don't

16  lock it up, because there's no intrinsic value to that card as

17  it's displayed on the shelf.  Do I have that right?

18          **MS. HENDERSON:**  Yes, your Honor.  And the trickier

19  part of this case is that the two cards they have presented in

20  their complaint that were drained, were not drained until

21  almost two months --

22          **THE COURT:**  Right.

23          **MS. HENDERSON:**  -- after they were purchased from

24  Kroger.

25          **THE COURT:**  Right.

1      **MS. HENDERSON:**  So it's even more removed than really

2  what we've been talking about so far.

3      **(Pause in the proceeding.)**

4      **THE COURT:**  Okay.

5      **MR. ELLZEY:**  Your Honor, I would argue that

6  the -- the value of the card is the -- is the card itself with

7  a number printed on it.

8      **THE COURT:**  Uh-huh.

9      **MR. ELLZEY:**  You know, if -- if we are correct in our

10  allegations, the number has value.  And if Kroger knows that

11  someone's --

12      **THE COURT:**  Scanning it.  And --

13      **MR. ELLZEY:**  -- scanning it.

14      **THE COURT:**  Taking pictures of it, whatever.

15      **MR. ELLZEY:**  Yes.  Somehow getting the numbers off

16  that, then --

17      **THE COURT:**  Okay.

18      **MR. ELLZEY:**  -- I believe they have a duty to the

19  consumer because they know the consumer's going to put money on

20  it.  And it will one day be drained when they try to use it.

21      **THE COURT:**  Yeah.  Okay.  All right.  I see that

22  theory.  I see what you're saying.

23      Okay.  So --

24      **(Pause in the proceeding.)**

25      **THE COURT:**  Anything else on the joint discovery and

1   case management plan?  We've obviously moved on to the motion.

2   And I'm going to continue in that regard, unless there is

3   anything else that anybody wanted to resolve in advance.

4          **MR. ELLZEY:**  Nothing further.  Just those two items.

5          **THE COURT:**  Okay.  All right.  So then as --

6          **MS. HENDERSON:**  Your Honor?

7          **THE COURT:**  Yes.

8          **MS. HENDERSON:**  Sorry.  One thing.

9          I think our plan noted that we were going to exchange

10  initial disclosures already.  But we have not to -- with all

11  candor to the Court.  I think mostly because the other

12  discovery deadlines had been extended.

13         So I just wanted to note that.  And to be --

14         **THE COURT:**  I noticed that yesterday.

15         **MS. HENDERSON:**  -- do that.  I'm sorry?

16         **THE COURT:**  Is there any reason not to do initial

17  disclosures?  I'm not even sure what a --

18         **MS. HENDERSON:**  I think the issues aren't outlined

19  clear enough for Kroger to know what we would be disclosing at

20  this point, given all of the arguments we have in our Motion to

21  Dismiss.

22     **(Pause in the proceeding.)**

23         **THE COURT:**  Okay.  Remind me of that when we are

24  setting what the schedule's going to be at the conclusion of

25  the hearing.

1           Okay.  All right.

2      **(Pause in the proceeding.)**

3           **THE COURT:**  All right.

4      **(Pause in the proceeding.)**

5           **THE COURT:**  I'm just looking at the JDC and P just

6  caught my notes.

7           So there's also a law firm listed there.  Tom Kirker

8  (phonetic) is that someone that's -- should be designated as

9  counsel on the case?

10          **MR. ELLZEY:**  I don't believe so, your Honor.

11          **THE COURT:**  Okay.

12          **MR. ELLZEY:**  Tom Kirker is not going to be appearing

13 before the Court.

14          **THE COURT:**  Okay.

15          **MR. ELLZEY:**  If -- if the Court requires his

16 appearance, a formal appearance, I can facilitate that.

17          **THE COURT:**  Is that the Kirker that was with Williams

18 Bailey and all of --

19          **MR. ELLZEY:**  It's his son.

20          **THE COURT:**  That's his son.  Really?

21          **MR. ELLZEY:**  Steve Kirker's son.

22          **THE COURT:**  Okay.  Steve Kirker.  That's who it was.

23 Okay.

24          **MR. ELLZEY:**  Yes, your Honor.

25          **THE COURT:**  Interesting.  All right.

1        **(Pause in the proceeding.)**

2            **THE COURT:**  All right.  So on the motion, let's turn

3    to that.

4        **(Pause in the proceeding.)**

5            **THE COURT:**  We have claims of --

6        **(Pause in the proceeding.)**

7            **THE COURT:**  Let me get to your causes of action in

8    the complaint.

9            The first count is negligence.  Second count is

10   contract.  And the third count is unjust enrichment.  As to

11   contract, is that something that was withdrawn or not responded

12   to in the response -- I mean, is -- is contract claim withdrawn

13   somehow?  Or --

14           **MR. ELLZEY:**  It --

15           **THE COURT:**  What do you want to do with that claim?

16           **MR. ELLZEY:**  It is -- it is not withdrawn at this

17   time, your Honor.  We -- we do plan to add a claim.  I think we

18   have a breach of warranty claim.

19           **THE COURT:**  And that breach of warranty.

20           **MR. ELLZEY:**  And -- and that -- may obviate the need

21   to keep the contract claim in there.

22           But we -- we do think we have a grounds for breach of

23   contract claim --

24           **THE COURT:**  Okay.

25           **MR. ELLZEY:**  -- based on facts.

19

1          **THE COURT:**  The, um --

2      **(Pause in the proceeding.)**

3          **THE COURT:**  Does the -- does the response have a

4  response on the contract claim?

5          **MS. HENDERSON:**  No, your Honor.  And they say there

6  was no contract between the parties that covers the losses.

7          **THE COURT:**  That's what I -- and where was that?  I

8  had that note.  I can't --

9      **(Pause in the proceeding.)**

10          **THE COURT:**  Although, instead of a contract about

11  that, you want to say that there was a -- that Kroger had a

12  warranty, Mr. Ellzey.

13          **MR. ELLZEY:**  I think that's --

14          **THE COURT:**  A warranty as to that card and --

15          **MR. ELLZEY:**  Correct.

16          **THE COURT:**  -- it's fit for its intended purpose or

17  whatever the warranty would be.

18          **MR. ELLZEY:**  Correct, your Honor.  I think that's the

19  more appropriate claim.

20          **THE COURT:**  All right.

21      **(Pause in the proceeding.)**

22          **THE COURT:**  Okay.  Um, because I was thinking of that

23  in terms of, when I was talking with my law clerk about it,

24  there is the Economic Loss Doctrine that was asserted that is

25  asserted as to the negligence claim.

1          But then in the response, I didn't see anything

2    trying to justify the contract claim.  So if there was not a

3    contract claim, I don't know that the Economic Loss Doctrine, I

4    think you could still argue it that well, even if they're not

5    pleading it, this actually was a contract.

6          But I wonder how the Economic Loss Doctrine -- it may

7    line up exactly the same as -- as your argument, even if it's a

8    breach of warranty claim.  But we don't have it teed up that

9    way, yet.  Is that --

10          **MS. HENDERSON:**  Uh-huh.

11          **THE COURT:**  -- right?

12          **MS. HENDERSON:**  Yes.

13          **THE COURT:**  I mean, obviously, it wasn't pleaded that

14    way.

15          **MS. HENDERSON:**  Yes.

16          **THE COURT:**  So what are -- what are your thoughts on

17    that?

18          **MS. HENDERSON:**  It was --

19          **THE COURT:**  Economic Loss Doctrine at this point,

20    noting that the contract claim, as pleaded is -- is not what

21    Plaintiffs are intending to go forward.

22          And, in fact, I'm dismissing that claim as pleaded.

23    That's different than whether there will be a -- and it's being

24    dismissed because there wasn't a response on that point trying

25    to defend it.

1      But there is the idea that you want to bring a breach

2  of warrant claim instead.

3      **MR. ELLZEY:**  Correct, your Honor.

4      **MS. HENDERSON:**  Uh-huh.

5      **THE COURT:**  Okay.

6      **MS. HENDERSON:**  Uh-huh.

7      **THE COURT:**  So Miss Henderson, you can react to that

8  on your feet, or just say I'd have to think about that when I

9  see what the breach of warranty claim is.

10     **MS. HENDERSON:**  Well, I would have to see what the

11 breach of warranty claim is.  But as to the economic loss, I

12 mean, I think that the -- the negligence claim would still be

13 barred based on economic loss.

14     Because the -- the Plaintiff has not alleged anything

15 that -- any damages outside of the $400 that they were not able

16 to use on these gift cards.  They haven't alleged any damages,

17 personal injury damages, beyond the loss of use of these gift

18 cards.

19     **THE COURT:**  Yeah.  That was --

20     **(Pause in the proceeding.)**

21     **THE COURT:**  So the pleading for damages in the

22 complaint was as to loss of use damages, actual damages, treble

23 damages, exemplary damages.

24     **(Pause in the proceeding.)**

25     **THE COURT:**  There is mental -- it says mental

1    anguish.

2              **MS. HENDERSON:**  Well, and, your Honor, as to mental

3    anguish, I mean, this isn't --

4              **THE COURT:**  And then it -- and -- and then there's

5    more like in the briefing loss of joy, and loss of positive

6    emotions, which I wonder how it's a corporation.  I'm -- I'm

7    wondering how it's experiencing these emotions.

8              And there may be law that precludes you, since we're

9    talking about this being purchased by an entity, not by a

10   particular persons.  There's that issue.

11             **MS. HENDERSON:**  Yes.

12             **THE COURT:**  Is that what you were going to?

13             **MS. HENDERSON:**  Yes.

14             **THE COURT:**  Okay.  Um --

15        **(Pause in the proceeding.)**

16             **THE COURT:**  All right.

17        **(Pause in the proceeding.)**

18             **THE COURT:**  I have concerns --

19        **(Pause in the proceeding.)**

20             **THE COURT:**  It's going to depend on, I'll say this.

21   I think that the negligence claim --

22        **(Pause in the proceeding.)**

23             **THE COURT:**  -- has problems under the Economic Loss

24   Doctrine.  I don't know if that's curable under a warranty

25   claim.  But maybe it lines up differently.

1          All I'm saying is, pay attention to that in

2    repleading it, as to what the damages might be that are

3    different than the economic damages associated with a breach of

4    warranty.

5          Because right now, it's really what's happened is the

6    loss of the use of the gift cards, which were supposed to be

7    for a certain value of money, and the warranty's going to be

8    saying, in -- in essence, that money should have been there

9    when I was using it and it wasn't.

10          And so the damages would be that.  And so, I've seen

11    some creative pleading that somehow sometimes gets a negligence

12    claim pleaded in that regard.  I think it's going to be tough.

13          **MR. ELLZEY:**  Right.

14       **(Pause in the proceeding.)**

15          **THE COURT:**  But I do think that you might be able to

16    state a warranty claim.  So, I -- I can at least conceive with

17    the theory of what you're saying is going on behind the scenes,

18    and how it should have been secured, and all, that that could

19    add up to that's part of the warranty that was given.

20          **MR. ELLZEY:**  I -- I think I'm not a good business

21    manager.  Because I allowed my associate, we debated about

22    this.  And he convinced me to stick with the negligence claim.

23    We rolled with it and here we are.

24          **THE COURT:**  Yeah.

25          **MR. ELLZEY:**  And -- and I -- I've always felt it's

1   more of a warranty case.

2           THE COURT:  Okay.

3           MR. ELLZEY:  And -- and I -- I -- I feel like it

4   needs to be re-pled that way.

5           THE COURT:  Well, you know --

6       (Pause in the proceeding.)

7           THE COURT:  I think your associate's fine.

8           MR. ELLZEY:  He's really smart.

9           THE COURT:  Yeah.  Yeah.  No.

10          MR. ELLZEY:  That's why I listened to him.

11          THE COURT:  And -- and -- that's --

12          MR. ELLZEY:  Yeah.

13          THE COURT:  -- on the Plaintiff's side.

14      (Pause in the proceeding.)

15          THE COURT:  It's not bad faith.

16          And so -- and you never know -- and you don't know

17  enough facts about what you're looking at.  And so, like on the

18  merits of what you're saying, that's always the different

19  thing, too, I think when young lawyers are looking at it in

20  terms of can we line this up to this specific elements of

21  negligence.  Maybe you could.  But then Economic Loss Doctrine

22  is just something that kind of makes that beside the point.

23          And it may end up being beside the point because of

24  Economic Loss Doctrine.

25      (Pause in the proceeding.)

1          **MR. ELLZEY:**  Understood.

2          **THE COURT:**  The, um --

3      **(Pause in the proceeding.)**

4          **THE COURT:**  On the injury.

5      **(Pause in the proceeding.)**

6          **THE COURT:**  If -- so you made an offer to make them

7  whole, which was refused as to that.

8      **(Pause in the proceeding.)**

9          **THE COURT:**  So I -- you'd at least be having a

10  defense of failure to mitigate damages, or whatever, because

11  you tried to make them whole.

12          **MS. HENDERSON:**  Uh-huh.

13          **THE COURT:**  Are you able to use something like that

14  towards even a standing argument as to injury and fact.  You

15  just weren't even injured in fact, because to the extent that

16  you said you were injured, we said we're sorry.  Here's all of

17  your money.

18          And maybe that's part of what you would say your

19  warranty was.  That it's like gosh, if -- cause usually on a

20  warranty you have a chance to make it right.

21          **MS. HENDERSON:**  Uh-huh.

22          **THE COURT:**  And so, does -- is that able to parlay,

23  though, into a standing argument?  Or is it just like a

24  affirmative defense?

25          **MS. HENDERSON:**  It's a standing argument, your Honor.

26

1   And there's case law from the Southern District that says that

2   an offer of complete relief will moot a plaintiff's claims.

3         THE COURT:  And is that also -- in a -- in a class

4   context as well?

5         Cause I know there's like expedient uses of that to

6   just serially remove potential named plaintiffs without

7   addressing the larger problem.  Did you cite any cases that

8   have that context in mind?

9         Cause this is pleaded as a class action.

10        MS. HENDERSON:  Correct, your Honor.

11        The cases that I cited were not class actions to my

12   knowledge.  However, the lead plaintiff has to have standing.

13   And based on what Plaintiff's counsel has said today, they have

14   to do a lot of figuring out --

15        THE COURT:  Yep.

16        MS. HENDERSON:  -- to see where this case is even

17   going to go, if there's any other --

18        THE COURT:  I --

19        MS. HENDERSON:  -- potential plaintiffs.

20        THE COURT:  I know exactly what you're saying.  The

21   lead Plaintiff does need to have standing.

22        But on the flip side in a class action, you can't

23   incentivize that to Defendants to say, well let's just keep

24   picking off, you know, in a 40,000 member class, let's just

25   keep picking off one at a time.  Cause we're happy to spend 50

1   to $100 again, and again, and again and never address the

2   bigger.

3          So, I'm not saying that it's wrong.  I'm just saying

4   on re-briefing that --

5          **MS. HENDERSON:**  Uh-huh.

6          **THE COURT:**  -- look at it from the class context.

7          **MS. HENDERSON:**  Will do, your Honor.

8          And I do think that the distinguishing factor in this

9   case is that the offer to -- for the Plaintiff to be made whole

10  was -- occurred prior to this --

11         **THE COURT:**  Prior to --

12         **MS. HENDERSON:**  -- being a --

13         **THE COURT:**  -- the suit.

14         **MS. HENDERSON:**  -- class action.

15         **THE COURT:**  I understand that as well.

16         **MS. HENDERSON:**  Yes.

17         **THE COURT:**  Yep.

18         **MR. ELLZEY:**  Your --

19         **THE COURT:**  Which -- which may make a difference.

20         **MR. ELLZEY:**  I'm sorry.  I didn't mean to interrupt,

21  your Honor.

22         **THE COURT:**  Yeah.  Go ahead.

23         **MR. ELLZEY:**  Your Honor, I would love to brief this

24  issue.  Because *Campbell Ewalt Case* (phonetic), United States

25  Supreme Court, 2016, is, I mean, it's -- it's dispositive on

1    this issue.

2            **THE COURT:**  Okay.

3            **MR. ELLZEY:**  An offer of judgment even, formal offer

4    of judgment, not even an informal settlement offer, does not

5    moot either the named Plaintiff's claims or the class'

6    claims --

7            **THE COURT:**  Yeah.

8            **MR. ELLZEY:**  -- for reasons stated in the opinion.

9            To paraphrase, it's -- Plaintiffs still have the

10   right to have his or her day in court.

11           **THE COURT:**  Uh-huh.

12           **MR. ELLZEY:**  And certainly, the class can't, you

13   know, the class can't evaporate based on what would, you know,

14   it's way that they didn't do that here.

15           I think they -- they had good intentions of

16   refunding.

17           **THE COURT:**  Yeah.

18           **MR. ELLZEY:**  Kroger did these Plaintiffs.

19           But -- but a common defense tactic in a class action

20   litigation is --

21           **THE COURT:**  Is what I just said.

22           **MR. ELLZEY:**  Pick off the main plaintiff for --

23           **THE COURT:**  Yeah.  That's what I just said.

24           **MR. ELLZEY:**  -- for -- right.  For --

25           **THE COURT:**  Yeah.

1          **MR. ELLZEY:**  Here.  Here's $10,000.  The guy'll never

2    say no to this.  And then this big, huge class action --

3          **THE COURT:**  Right.

4          **MR. ELLZEY:**  -- goes away.

5          And I would never advise my client to reject that.

6          **THE COURT:**  And the interesting feature is factually

7    what you're saying.  That's certainly true once the class

8    action is filed and going.

9          **MR. ELLZEY:**  Yes.

10         **THE COURT:**  Factually here, as I'm understanding it,

11   of course, it's not really in your pleading.  But as I'm

12   understanding it factually, Kroger, upon being advised two

13   months later, you come back with the cards.  Hey, there's no

14   money on here.  And I haven't tried to use it.

15         Kroger said, oh, we're sorry.  Here, we'll give you

16   replacement cards.  That's prior to the notion that there would

17   be a class action on this.

18         And that -- that could have meaning.  Cause it

19   doesn't have the same -- they're not a Defendant at that point.

20   And so they don't have the same intent as a Defendant in a big

21   commercial class action.

22         **MR. ELLZEY:**  Well, they were.  The case had been

23   filed, your Honor, to be clear --

24         **THE COURT:**  The case had been filed --

25         **MR. ELLZEY:**  -- before --

1          THE COURT:  -- before?

2          MR. ELLZEY:  Before there was any offer.  So --

3          THE COURT:  Okay.  Well then, okay.  Well, I -- I

4   don't know the facts entirely.

5          That's contrary to what I just heard.

6          MS. HENDERSON:  That's -- that's not my

7   understanding.  But because --

8          THE COURT:  Exactly.

9          MS. HENDERSON:  -- you raised that issue --

10         THE COURT:  It's thoroughly --

11         MS. HENDERSON:  -- I'll certainly make sure.

12         THE COURT:  Okay.  That may matter to the --

13         MR. ELLZEY:  And I'm pretty sure --

14         THE COURT:  -- issue that we're discussing.

15         MR. ELLZEY:  I don't want to -- I don't want to say

16  anything that's not accurate.

17         I'm pretty sure the case was on file.

18         THE COURT:  Okay.

19         MR. ELLZEY:  And -- and --

20         THE COURT:  That's fine.

21         MR. ELLZEY:  -- that -- that was Kroger's first

22  response.  Fine.  You know --

23         THE COURT:  Okay.

24         MR. ELLZEY:  -- it's great when Defendants reach out

25  and want to resolve things.

1          But -- but the point of -- of this discussion is U.S.

2    Supreme Court says that doesn't moot the case.

3          **THE COURT:**  Okay.

4       **(Pause in the proceeding.)**

5          **THE COURT:**  Okay.  Um --

6       **(Pause in the proceeding.)**

7          **THE COURT:**  What else do you want to say, Miss

8    Henderson, about your attack on the negligence claim?

9       **(Pause in the proceeding.)**

10          **MS. HENDERSON:**  I think we discussed it, your Honor.

11          I mean, I -- the main points that we've made are as

12    to economic loss and the lack of damages for the issues that

13    we've talked about.

14          **THE COURT:**  So, I mean, cause as to -- I -- I'm

15    saying it from the standpoint of this.

16          Plaintiff is already going to be allowed to replead.

17    And so, I want to note any concerns that you have about

18    other -- that there's duty --

19       **(Pause in the proceeding.)**

20          **THE COURT:**  -- duty causation, injury --

21          **MS. HENDERSON:**  Uh-huh.

22          **THE COURT:**  -- all feature into the negligence

23    claims.

24          So as to duty, is there anything better that

25    Plaintiff would need to plead as to duty?  I just want to make

32

1   sure that when it's teed up this next time, the best shot the

2   Plaintiff could take at it has been taken so that if I later

3   agree with you --

4           **MS. HENDERSON:**  Uh-huh.

5           **THE COURT:**  -- the dismissal's with prejudice.

6           Otherwise, I just have to let them replead again.

7           **MS. HENDERSON:**  I understand, your Honor.

8           **THE COURT:**  Okay.

9           **MS. HENDERSON:**  I think as to duty, the issue with

10  their pleadings currently is that, and it also kind of goes to

11  causation, is that the draining of the cards occurred after the

12  cards left Kroger's premises, and after they were outside of

13  Kroger's control.

14          **THE COURT:**  Okay.

15          **MS. HENDERSON:**  And so, the causation and the

16  connection aspect of the issue at hand to Kroger is lacking.

17  And, frankly, I don't think that Plaintiff is going to be able

18  to fix that, or further address that, by a repleading.

19          And that goes to duty and causation.

20          **THE COURT:**  So it's the duty and -- and the

21  causation.  There were facts pleaded as to -- it's known that

22  some people would come in and scan or take pictures of these

23  things sitting on the rack.

24          **MR. ELLZEY:**  Right.

25          **THE COURT:**  It's unknown why they did that, or what

33

```
 1  that -- but there is at least facts pleaded that hey, you're

 2  aware that people were doing that.

 3          MR. ELLZEY:  Correct, your Honor.  And -- and, again,

 4  our --

 5          THE COURT:  Or you should have been aware that people

 6  were doing that.

 7          MR. ELLZEY:  Right.  It's -- it's a knew or should

 8  have known.

 9          THE COURT:  Uh-huh.

10          MR. ELLZEY:  I mean, this is a -- I mean, if you

11  spend two minutes on-line, you will find that this is a

12  pervasive nationwide issue, this card draining.

13          THE COURT:  Uh-huh.

14          MR. ELLZEY:  So, if -- if a company as sophisticated

15  as Kroger is, is aware of it, you know, there's -- there's

16  foreseeability.  And I think at that point, it triggers a duty

17  for Kroger to protect its consumers.

18          They can't just say, give us a hundred bucks, or 20

19  dollars, and, you know, we're going to sell you this piece of

20  plastic that may or may not work.  They're representing it

21  does.

22          THE COURT:  Okay.

23          MR. ELLZEY:  You get the card that they sell.

24          THE COURT:  So let's make sure on any repleading that

25  you have factually -- you are specifying what the duty is.  And
```

TRINITY TRANSCRIPTION SERVICES

1    you're also specifying, you know, subject to the requirements

2    of what Rule 8, sufficient facts as to what the duty was and

3    the source from which it arose.

4            **MR. ELLZEY:**  Understood.

5            **THE COURT:**  So that that can then be responded to by

6    the Defendants.

7            **MS. HENDERSON:**  Well, and, your Honor, another issue

8    that we addressed in our motion is that for a duty to arise to

9    prevent criminal activity, it has to be connected to this

10   Kroger location.  It has to be at this Studemont Kroger

11   location.

12           **THE COURT:**  Okay.

13           **MS. HENDERSON:**  It cannot be a nationwide allegation

14   of card draining issues.  It has to be that there was a duty

15   that arose due to prior knowledge and of issues at this

16   location.

17           **THE COURT:**  It could be that.  I'm not saying that it

18   necessarily has to be that.

19           It -- I think that there is, I mean, as I'm

20   understanding it, your pleading would be every single Kroger

21   location should know that this is going on.  Because it's a

22   nationwide problem.  And here is the background that shows

23   everyone in a financially responsible position for a big

24   corporate entity that does something like this, would be aware

25   that there's this hacking problem.

1          **MR. ELLZEY:**  Correct, your Honor.  And -- and as I

2     understand it, and -- and as -- as their motion states,

3     Kroger's motion states, Kroger's making a *Timberwalk (phonetic)*

4     *Premises* liability argument.

5          That argument's appropriate for summary judgment.

6     You know, we haven't had any opportunity to gather evidence of

7     specific instances at this Studemont location, to the extent

8     we're even required to.  We're making a general negligence

9     claim.

10          But -- but under *Timberwalk*, Texas state law --

11          **THE COURT:**  Well, we're clearly not --

12          **MR. ELLZEY:**  -- premises liability --

13          **THE COURT:**  I mean, I understand premises liability

14     vis-à-vis negligence when it's someone got physically injured.

15          **MR. ELLZEY:**  Right.

16          **THE COURT:**  This is a commercial injury.  So I don't

17     know -- I don't know that that necessarily lines up.  Perhaps

18     it does.  I haven't looked as closely at that.

19          **(Pause in the proceeding.)**

20          **THE COURT:**  So Kroger should just be --

21          **(Pause in the proceeding.)**

22          **THE COURT:**  You can't be trying to extend that

23     doctrine into negligence situations where it doesn't fit.

24          Although, I do understand what you're saying

25     about -- I have a lot of Walmart cases with people getting

36

1    attacked in parking lots, and stuff.  And you -- I -- I

2    understand the rules as to that.

3          This is -- this is for criminal activity that's not

4    Kroger's criminal activity.  I understand that.  But it's third

5    parties.  But it's different than those types of situations.

6          So --

7          **MS. HENDERSON:**  Well, and there's the

8    foreseeability --

9          **THE COURT:**  Uh-huh.

10          **MS. HENDERSON:**  -- requirement there.

11          And -- and it's particularly challenging when it's

12    related to third-party criminals.  And -- and it wasn't

13    foreseeable that it occurred at this location.

14    For -- and -- and I'm taking it --

15          **THE COURT:**  Maybe.  It depends on what the pleadings

16    say as to the generality and the ubiquity of this being a known

17    phenomenon about these types of cards.

18          I mean, I have, like in mind the idea that yes, I've

19    kind of heard that this thing -- that this does happen

20    sometimes.  I haven't heard about it.  But I'm not in the

21    position that I need to know about it.  That it's just like

22    this -- such a huge problem that Walgreen, Kroger's, CVS, name

23    all of your grocery stores and retail outlets that offer these.

24    They should all be equally undertaking the same duty or

25    responsibility and care towards their cards that they're

1   offering.

2           But maybe you could plead it that way.

3       **(Pause in the proceeding.)**

4           **MR. ELLZEY:**  Understood.

5           **THE COURT:**  Okay?

6           **MS. HENDERSON:**  Yes, your Honor.  I think that -- I

7   think one nuance, though, is that the way the Plaintiff has

8   pled it now, is that they have alleged that they're -- a

9   criminal has come into the store.  So there is a physical

10  presence in the store, rather than some overarching cyber

11  crime-type situation.

12          **THE COURT:**  Uh-huh.

13          **MS. HENDERSON:**  And so, I think it is more aligned

14  with other criminal activity that would occur at a store.

15  Because that's what they're alleging, is that it is --

16          **THE COURT:**  Okay.

17          **MS. HENDERSON:**  -- a physical presence in the store.

18          **THE COURT:**  Okay.  I'm not saying you can't argue it.

19  And I would certainly take a look at it.

20          I'm just sort of identifying for what better

21  pleading, and then when you're arguing it back to me, that's my

22  concern about it is making sure that it fits --

23          **MS. HENDERSON:**  Uh-huh.

24          **THE COURT:**  -- this type of whatever the final

25  allegations are on this, the type of criminal activity that

38

```
 1   premises liability fits.
 2           MS. HENDERSON:  Yes, your Honor.
 3           THE COURT:  And it might.  Okay.
 4      (Pause in the proceeding.)
 5           THE COURT:  All right.  We've been over injury and
 6   damages.  So I think that's all I have.
 7           On unjust enrichment, anything else you want to
 8   argue.  It's not an independent cause of action.  What else?
 9   Anything else?
10           MS. HENDERSON:  Well, in their response, they stated
11   that they are going to refocus an amended pleading on
12   negligence and breach of warranty, and left out the unjust
13   enrichment claim instead.
14           THE COURT:  Okay.
15           MS. HENDERSON:  And they didn't fully address that
16   claim in their response.  So I'd argue it was waived.
17           THE COURT:  Okay.
18      (Pause in the proceeding.)
19           THE COURT:  Well it sounds -- and a lot of what we're
20   talking about here is if you really do zero in on all of this
21   as breach of warranty, you go at it as to that.
22           When -- when might you know as to U.S. Bank and
23   whether they're going to be a target here?
24           MR. ELLZEY:  I -- I believe some discovery would be
25   required.
```

39

```
 1              I'm thinking more likely they will not be.  I just
 2    wanted to bring the Court --
 3              THE COURT:  Because why?
 4              MR. ELLZEY:  I -- I -- I think our case is -- is
 5    against Kroger for failing to secure.
 6              THE COURT:  Okay.
 7              MR. ELLZEY:  So U.S. Bank's involvement in this may
 8    be zero.  I -- I just wanted to point out to the Court that
 9    it's a potential party.
10              THE COURT:  They could be.  Well --
11              MR. ELLZEY:  Yeah.
12              THE COURT:  -- it's one of those things that could be
13    totally U.S. Bank's fault or personnel behind it that are doing
14    it.
15              But that's different than whether Kroger had a duty
16    to secure the cards as you're suggesting.
17              MR. ELLZEY:  Yes, your Honor.
18              THE COURT:  So it's that or the warranty --
19              MR. ELLZEY:  Yeah.  There could be --
20              THE COURT:  -- that's involved in that.
21              MR. ELLZEY:  Two different cases for that.
22              THE COURT:  Okay.
23              MR. ELLZEY:  Yeah.
24              THE COURT:  Okay.
25         (Pause in the proceeding.)
```

```
 1              THE COURT:  You know, you're going to have to decide
 2   sooner rather than later as to whether it's just Kroger in this
 3   action or the bank.  And I don't know what you mean by saying,
 4   well, I need discovery as to whether to bring someone else in.
 5              I think I don't know that you're, I mean, based on
 6   the -- like when you're articulating it now as to what the
 7   theory is, I don't know why it matters that you go get
 8   discovery from U.S. Bank.
 9              MR. ELLZEY:  Sometimes saying things out loud for
10   me --
11              THE COURT:  Yeah.
12              MR. ELLZEY:  -- helps me think.
13              THE COURT:  Yeah.
14              MR. ELLZEY:  Or -- and as I stand here now,
15   I'll -- and for -- for efficiency, I'll say that we will
16   confine this case to Kroger.
17              THE COURT:  All right.  All right.
18         (Pause in the proceeding.)
19              THE COURT:  Okay.  That's clarifying.  Thank you.
20              All right.  So how much time would you like for
21   repleading?
22              MR. ELLZEY:  Um --
23         (Pause in the proceeding.)
24              MR. ELLZEY:  Is -- is 30 days.
25              THE COURT:  Oh, certainly, yeah.  I mean, I'll give
```

1    you 30 days.

2         **MR. ELLZEY:**  Thirty -- thirty days, maybe, you know,

3    45 to be safe.  Sort of starting --

4         **THE COURT:**  Yeah.

5      **(Pause in the proceeding.)**

6         **THE COURT:**  Any objections?

7         **MS. HENDERSON:**  No objection.

8         **THE COURT:**  It's all towards -- I'm giving

9    Plaintiff's their best shot.  Because if I am taking up your

10   motion favorably next time, it will be with prejudice.

11        And so, I want to give that best shot.  All right.

12   Forty-five days.

13     **(Pause in the proceeding.)**

14        **THE COURT:**  Do we need to set other deadlines?  Or

15   should I just take up the pleading, and then the motion, and

16   then we set deadlines after that?

17        **MS. HENDERSON:**  I prefer that we take up the motions

18   and pleadings issues first.  And then set deadlines.  Just so

19   we're not -- so we have the issues outlined that may go

20   forward.

21        **MR. ELLZEY:**  No problem with that, your Honor.

22        **THE COURT:**  Okay.

23        **MR. ELLZEY:**  I think it will be hard to run a -- a

24   dual track --

25        **THE COURT:**  All right.

42

1    **MR. ELLZEY:** -- when we don't know what we're dealing

2    with.

3         **THE COURT:** So -- all right.

4         So 45 days to file the -- and I'll specify date in my

5    minute entry what -- what that drop dead date is, 45 days out

6    to file an amended complaint.

7         How much time would you like to bring your motion?

8         **MS. HENDERSON:** Put me at 30 days, your Honor.

9         **THE COURT:** Thirty days to bring the motion.

10        And then it'll be normal response and reply deadlines

11   after that.

12        The scheduling and docket control order is abated.

13   And discovery is otherwise stayed, unless there's anything by

14   agreement that you all want to do.

15        And, I will see you again after the briefing is

16   complete.

17        **MR. ELLZEY:** Thank you, your Honor.

18        **MS. HENDERSON:** Thank you, your Honor.

19        **THE COURT:** Anything else?

20        **MR. ELLZEY:** No.

21        **MS. HENDERSON:** No thank you.

22        **THE COURT:** All right.

23        **MR. ELLZEY:** Nothing further.

24        **THE COURT:** Thank you.

25        Was your associate the primary writer of the --

43

1          **MS. HENDERSON:**  Yeah.  Well, not -- no -- no one

2    that's here.  But the associate on the pleadings was the

3    primary writer.

4          **THE COURT:**  Oh, okay.

5          **MS. HENDERSON:**  Yes.  She's out of town, otherwise we

6    would have brought here.

7          **THE COURT:**  All right.  Well you can compliment her

8    then, or him.

9          **MS. HENDERSON:**  Thanks.  I will.

10         **THE COURT:**  So, all right.  Thanks.

11         **MS. HENDERSON:**  Thank you, your Honor.

12         **MR. ELLZEY:**  Thank you, your Honor.

13         **THE COURT:**  All right.  Thank you all very much.

14         We're adjourned.

15     **(This proceeding was adjourned at 11:20 a.m.)**

16

17                    CERTIFICATION

18   I certify that the foregoing is a correct transcript from the

19   electronic sound recording of the proceedings in the above-

20   entitled matter.

21   /s/*Cheryl L. Battaglia*                    August 22, 2024

22      Transcriber                    Date

23   4:24-CV-0478

24   08/06/2024 - 08/22/24