## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| HOUSTON POLICE OFFICERS' UNION, individually and on behalf of all others similarly situated, | § § § § | |
| *Plaintiff,* | § § | Civil Action No. 4:24-cv-00478 |
| vs. | § § | JURY TRIAL DEMANDED |
| KROGER TEXAS L.P., | § § § | |
| *Defendant.* | § | |

## PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Houston Police Officers' Union, individually and on behalf all others similarly situated, by its undersigned attorneys, sues Defendants Kroger Texas L.P. and The Kroger Co. seeking damages, restitution, and injunctive relief for a Class, defined below, concerning their knowing failure to secure prepaid cards they sell from "card draining"—a nationwide issue that has now damaged Houston Police Officers' Union. Plaintiff alleges below upon information and belief, except as to its own actions, the investigation of its counsel, and facts that are a matter of public record.

Based on Plaintiff's experience with the gift cards, Kroger Texas L.P.'s insufficient explanation, and public complaints, Plaintiff believes further substantial evidentiary support will be produced after a reasonable opportunity for discovery. Many facts supporting these allegations are known only to Defendants or are exclusively within their control.

## I.     NATURE OF THE ACTION

1.      Each year, people in the United States load more than a trillion dollars onto prepaid cards.[1] These prepaid cards are popular gifts, often given as an alternative to cash. Prepaid cards are also used by many without access to a credit card or traditional bank account to pay bills, make online purchases, and pay for transactions that are difficult or impossible to complete with cash. As with traditional bank deposit accounts accessible through bank debit cards, consumers rightfully expect the money they put on prepaid cards to be available to spend when the card is used.

2.      This is a class action lawsuit against a company selling such prepaid cards—in the form of VISA Gift Cards here—that, upon use, did not have the money that purchasers added to the cards. Plaintiff and others similarly situated discovered, often when using their VISA Gift Cards for the first time, the money paid for and added to those cards was gone and the balance was $0 or close to it, despite no other use of the card. These customers bought their cards from Kroger Texas L.P. and/or The Kroger Co. ("Kroger" or "Defendants"), which claim the lack of funds in the VISA Gift Cards they sold is not their fault. They blame third parties' fraud, in the well-known by Defendants form of "card draining," for Plaintiff and other consumers' financial losses—foisting all costs of said fraud onto their innocent customers for scams Defendants know about.

3.      Kroger sold VISA Gift Cards that did not have the characteristics, uses, or benefits advertised or promoted. Either through reckless incompetence or malice, Kroger failed to secure the VISA Gift Cards in a location alleged third parties could not steal the cards' information them before sale. Hundreds of consumers have reported remarkably similar experiences of buying or

---

[1] James Wood, *Prepaid cards market expected to exceed $5.5 trillion dollars by 2028*, Payments Industry Intelligence, Nov. 30, 2021, available at https://www.paymentscardsandmobile.com/prepaid-cards-market-expected-to-exceed-5-5-trillion-dollars-by-2028.

receiving a VISA Gift Card, attempting to use it to pay, having the card declined for insufficient funds, and then learning the funds were spent by someone else. This is all without the consumer's permission, and before they ever had a chance to use the card. Consumers have reported these experiences to news media throughout the country and on many online review and consumer complaint websites.

4.    Kroger's insufficient security is the direct cause of the theft of money from its VISA Gift Cards through a practice known as "card draining"—unless the fault lies internally with Kroger. Its lax security allows easy access to the cards, and there is lack of other protocols that prevent anyone but the rightful cardholder from making purchases with a VISA Gift Card.

5.    Despite Kroger having known for years that its own lax security led to many card-draining incidents, it has not sufficiently improved its own security, the cards' packaging, or implemented other changes to prevent those losses. As the direct result of Defendants' years-long failure to secure, numerous consumers and gift recipients have been needlessly subjected to card draining.

6.    This action is brought on behalf of a Class consisting of all persons and entities who, like Houston Police Officers' Union, purchased fraudulent VISA Gift Cards from a Kroger store that were drained upon customers' or gift recipient' first use despite paying full price, from February 7, 2020, through the original filing date of this suit, February 7, 2024, inclusive ("Class"). The term 'use' above includes the traditional meaning and any attempt by the customer to share the VISA Gift Card's information or have someone else use the card in any legitimate way. This action seeks to recover damages, restitution, and injunctive relief for Plaintiff and future Class members' claims, which are brought under common law against Kroger for selling fraudulent VISA Gift Cards, and for failing to prevent the foreseeable harm to Plaintiff and those similar

situated.

7.      Plaintiff on behalf of itself, and all similarly situated consumers, seeks compensatory, injunctive, and rescissory relief, providing rescission and repayment of all money used to buy fraudulent VISA Gift Cards that were illicitly drained from during the class period, and the right to secure and conserve such funds until repayment. For injunctive relief, Plaintiff and the Proposed Class seek changed business practices from Kroger in the form of added low-cost security mechanisms to ensure consumers purchase untampered gift cards.

## II.       PARTIES AND PERSONAL JURISDICTION

8.      Plaintiff Houston Police Officers' Union ("HPOU") is the union established to protect and serve the individual police men and women who protect and serve the people of Houston. It may be contacted through the undersigned, Ellzey & Associates, PLLC.

9.      Defendant Kroger Texas L.P. is registered as an Ohio Limited Partnership with a mailing address at PO Box 305103, Nashville, TN 37230-5103, that acts as a corporation and conducts business in Texas. It has been served.

10.     Defendant The Kroger Co. is registered as an Ohio Corporation with a mailing address at 1014 Vine St, Attn Tax Department, Cincinnati, OH 45202-1141, that acts as a corporation conducting business in Texas. It can be served with process by serving its registered agent, Corporation Service Company d/b/a/ CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620 Austin, Texas 78701, or wherever it may be found.

11.     The Court has personal jurisdiction over Defendants because they conduct business and maintain operations in this District, are entities who either are present in this District for jurisdictional purposes or have sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

12.    Whenever this Complaint refers to any act of "Kroger" or "Defendants," such allegation shall be deemed to mean Defendants Kroger Texas L.P. and/or The Kroger Co. did the acts alleged in the complaint through its officers, directors, agents, employees, or representatives while they were acting within the actual or ostensible scope of their authority.

### III.    SUBJECT MATTER JURISDICTION AND VENUE

13.    This Court has original jurisdiction of this action under 28 U.S.C. § 1332.  This controversy is between citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Further, the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which there are more than 100 Class members, members of the Class are citizens of a State different from Defendants and a Class member may be a citizen or subject of a foreign state and Defendants are citizens of a state. 28 U.S.C.A. § 1332(d)(2)(A-B). The Class alleged is likely to have greater than $5,000,000 in damages, as pleaded below, and include members who are foreign state citizens purchasing fraudulent VISA Gift Cards from Defendants, which are registered as an Ohio-based limited partnership and Ohio Corporation, respectively.

14.    Venue in this Court is proper under 28 U.S.C. § 1391(b). The claims asserted here arose in this district; a substantial part of the activities, conduct, or damages giving rise to the claims occurred in this district; Defendants have substantial contacts with this district; and Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect in this District.

### IV.    MISNOMER / ALTER EGO

15.    In the event any party is misnamed or are not included here, it is Plaintiff's contention that such was a "misidentification," "misnomer," or such parties are "alter egos" of parties named here. Alternatively, Plaintiff contends that such "corporate veils" should be pierced

to hold such parties properly included in the interest of justice.

## V.    PRINCIPAL-AGENT LIABILITY

16.    All allegations here of acts or omissions by Defendants include, but are not limited to, acts and omissions of Defendants' officers, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice-principals, partners, agents, servants, and owners. Plaintiff alleges that such acts and omissions were committed or made with express or implied authority of Defendants or were ratified or otherwise approved by Defendants; or otherwise, that such acts or omissions were made in the routine, normal course of the actor's employment or agency, and within the scope of the agency or employment through Defendants. Further, Kroger Texas L.P. is presumed to be an agent of The Kroger Co., who is the principal.

## VI.    FACTUAL ALLEGATIONS

17.    Over the past decade, numerous cardholders have had their money unsuspectingly stolen from their VISA Gift Cards purchased at various Kroger locations nationwide—of which Kroger is aware.[2] Plaintiff alleges that, at least, the information stealing part of the fraud occurs

---

[2] John Matarese, *How scammers can drain your gift cards before you get a chance to use them*, KXAN LEX18 (Sept. 17, 2019), available at https://www.lex18.com/money/consumer/dont-waste-your-money/how-scammers-can-drain-your-gift-cards-before-you-get-the-chance-to-use-them (discussing gift card scamming at Kroger stores); The Kroger Co., *Your guide to common consumer scams*, Money Services at Kroger, available at https://moneyservices.kroger.com/fraud-awareness/common-consumer-scams (Kroger discussing other types of scams related to gift cards); Better Business Bureau, *Complaints Kroger Personal Finance, LLC*, https://www.bbb.org/us/oh/cincinnati/profile/financing/kroger-personal-finance-llc-0292-10004531/complaints (customer complaints about gift card fraud at Kroger stores); James Wood, *Prepaid cards market expected to exceed $5.5 trillion dollars by 2028*, Payments Industry Intelligence (Nov. 30, 2021), available at https://www.paymentscardsandmobile.com/prepaid-cards-market-expected-to-exceed-5-5-trillion-dollars-by-2028/ (discussing various types of prepaid fraud including telephone scams, card swaps, account takeovers, tax frauds, and skimming); Matthew Dietz, *Kentucky man out hundreds of dollars after falling victim to gift card scam*, KXAN WLWT5 (Oct. 18, 2023), available at https://www.wlwt.com/article/kentucky-man-victim-kroger-gift-card-scam/45575325 (discussing credit card scams at Kroger); Jacob Willeford, *OUT OF LUCK Customers slam Kroger's gift card policy saying they're 'disappointed' after losing $100 but securing the card is simple*, The U.S. Sun (Oct. 9, 2023), available at https://www.the-sun.com/money/9285874/customers-slam-krogers-gift-card-policy-securing (discussing VISA gift card scams at Kroger and ways to prevent the fraud); Ostermann, *Kroger VGC Fraud/Scam is Worse Than We Thought – Very Elegant Plan*, Miles to Memories (May 17, 2019), available at https://milestomemories.com/kroger-vgc-fraud-scam-is-worse-than-we-thought (discussing VISA gift card fraud at Kroger stores).

while the cards under Kroger's control. And, because this has been a well-known nation-wide issue affecting Kroger and other prepaid card sellers for years, what happened to Plaintiff and those similarly situated was foreseeable. These losses result from Kroger's insufficient security to protect its VISA Gift Cards that allows employees or third parties to walk in and scan the cards' numbers. Armed with a card's numbers, thieves can drain the card of value before a cardholder could even use it. The money on a VISA Gift Card is accessible—to rightful owners or anyone else with the card's information—without a PIN or any registration process that protects against fraudulent transactions.

18.    Kroger, which has known about rampant card-draining of its VISA Gift Cards for years, has still failed to prevent the practice by sufficiently improving its security to protect its consumers from fraud.

19.    One such consumer, Houston Police Officers' Union ("HPOU") purchased 4 VISA Gift Cards intended as giveaways to clients and customers on August 3, 2023, from Kroger at its 1440 Studemont St, Houston, TX 77007 Kroger location, shown below:



20.    Yet upon attempting to use these cards, HPOU discovered the cards had only $2 remaining on the balances, meaning the cards were illicitly drained. That was confirmed upon

checking the VISA Gift Cards' activity reports online, two of which are copied below, showing purchases from Amazon costing $98—purchases Plaintiff or its gift recipients did not make. These reports are the type of evidence that can show the purchaser or gift recipient did not use their card:



21.    Upon visiting the Kroger location where the VISA Gift Cards were purchased, HPOU learned of an alleged scam involving the VISA Gift Cards. Another possibility is that Kroger or a Kroger employee is just stealing the money used to buy its fraudulent VISA Gift Cards. Either way, the result is unacceptable for Plaintiff and other customers who expect Kroger to sell them prepaid cards that are not drained and that contain the money added to them. What happened to Plaintiff and those similarly situated was foreseeable. Kroger knew of the "card draining" scams and Kroger had a duty to secure its prepaid cards, including VISA Gift Cards, which it failed to do.

22.    HPOU's president, Douglas Griffith, went to the Kroger location HPOU purchased their VISA Gift Cards from and spoke with one of Kroger's customer service employees. Kroger's employee claimed third parties walk into the store, scan the VISA Gift Cards digital information,

and set a computer program that monitors for when balances are loaded onto the VISA Gift Cards at the time of their purchase. Upon information and belief, once the VISA Gift Cards have a balance, the program eventually drains the gift cards by purchasing products—which means its traceable in Kroger's records—before the rightful purchasers could use the gift cards. This also meshes with the information provided in the webpages cited in Footnote 2 *supra*. HPOU thinks that may be the case or it could be an inside job. Again, same result either way—Kroger failed to secure its prepaid cards despite knowledge of card draining schemes.

23.    Kroger sells VISA Gift Cards in sections of its stores with other gift cards that are not protected.



24.    Despite Kroger's awareness of this alleged security issue that has led to potentially thousands of defrauded customers, Kroger denies liability and refuse to change its practices. This is especially odd as Kroger keeps other products behind lock and key—presumably for the same reasons VISA Gift Cards, and other gift cards, should be behind lock and key too, theft and fraud. Examples of proper security already employed at the Kroger location are shown below for powdered baby formula and tobacco products:







25.     Kroger is a sophisticated, successful business entity with the awareness of the issue, the capital to prevent it, and the unilateral ability resolve it. Rather than resolving it, Kroger has disregarded the rights of Plaintiff and its other customers by, among other things, intentionally, willfully, or recklessly failing to take adequate and reasonable measures to protect its VISA Gift Cards against unauthorized tampering; failing to take adequate and reasonable measures to protect Plaintiff and its other customers from an alleged fraud that was known to Kroger; failing to take standard and reasonably available steps to prevent the alleged fraud; and failing to refund Plaintiff and Class Members without filing suit. In addition, Kroger and its employees failed to properly monitor the VISA Gift Cards to prevent tampering. Had Kroger properly monitored its property, which it knew was under threat from card draining, it could have prevented the fraud. Plaintiff's damages resulted from a combination of insufficiencies that demonstrate Kroger disregarded safety procedures that could have protected Plaintiff and its other customers.

26.    The damages suffered by Plaintiff and those similarly situated, for which they deserve redress, resulted from Kroger's failure to implement adequate and reasonable security procedures and protocols necessary to protect its VISA Gift Cards before purchase, failure to protect Plaintiff and its other customers from buying fraudulent VISA Gift Cards, and failure to redress Plaintiff and other customers' complaints of fraud.

27.    Plaintiff alleges that Kroger acted with scienter in connection with the claims. Upon information and belief, the mechanism of the gift card fraud and potential for consumer fraud were known risks to Kroger, or should have been known, and thus Kroger was on notice that failing to take steps necessary to secure its VISA Gift Cards from those risks left that property in a dangerous condition ripe for tampering or information stealing.

28.    For these reasons, Plaintiff on behalf of himself, and all similarly situated consumers, seeks compensatory, injunctive, and rescissory relief, providing rescission and repayment of all money used to buy VISA Gift Cards from Kroger during the class period that was drained, and the right to secure and conserve such money until repayment.

29.    Accordingly, Plaintiff sues Kroger seeking redress for its improper and unlawful conduct by alleging: (i) breach of express warranty—through which Kroger was unjustly enriched.

## VII.    CLASS ACTION ALLEGATIONS

30.    Plaintiff brings this action under Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure on behalf of a class tentatively defined as:

GIFT CARD CLASS:

**All persons and entities in the United States who purchased 1 or more VISA Gift Cards from Kroger and the card was found to be improperly drained upon first use below the added monetary value at purchase, from June February 7, 2020, through the original filing date of this suit, February 7, 2024, inclusive.**

31.    The term 'use' above includes the traditional meaning and any attempt by the

customer to share the VISA Gift Card's information or have someone else use the card in any legitimate way. Excluded from the class definition are any employees, officers, directors of Kroger, and attorneys appearing here, and any judge assigned to hear this action. Plaintiff reserves the right to modify this class definition as he obtains relevant information.

32.     The proposed class can be identified through Kroger's records, including receipts, use of card date, and customer complaints, as well as publicly available data, among other information. Such data suggests there may be hundreds or thousands of potential victims based on publicly available complaints. Accordingly, the number of Putative Gift Card Class Members is believed to be in the thousands, rendering the class so numerous that individual joinder of all class members is impracticable.

33.     Plaintiff is a member of the proposed class.

**<u>Commonality</u>**

34.     There are questions of fact common to the Putative Gift Card Class, and those questions predominate over questions affecting any individual Putative Gift Card Class Member. Common questions of fact include but are not limited to:

      a.     Whether Kroger intentionally, willfully, or recklessly failed to take adequate and reasonable measures to protect its VISA Gift Cards against unauthorized tempering;

      b.     Whether Kroger intentionally, willfully, or recklessly failed to take adequate and reasonable measures to protect Plaintiff and its other customers from an alleged fraud already known by Kroger;

      c.     Whether Kroger intentionally, willfully, or recklessly failed to take adequate and reasonable measures to prevent the alleged fraud;

      d.     Whether Kroger intentionally, willfully, or recklessly failed to take adequate and reasonable measures to refund Plaintiff and Class Members;

      e.     Whether Kroger intentionally, willfully, or recklessly failed to take adequate and reasonable measures to properly monitor its VISA Gift Cards to prevent tampering;

f.  Whether Kroger fraudulently promoted future products or services, or futures in products or services—products or services Kroger knew would not exist as promoted or at all—causing consumers like those in the Putative Gift Card Class to buy said VISA Gift Card products;

g.  Whether Kroger violated its agreement(s) to deliver functional products and breached its agreement(s);

h.  Whether Kroger knew the VISA Gift Cards would not be functional when they claimed it would be or was, and made false representations despite that knowledge;

i.  Whether Kroger had a duty to provide functional products to its consumers, and if Kroger violated that duty;

j.  Whether Kroger failed to deliver on its promises to consumers to provide products as advertised or promoted;

k.  Whether Kroger made any false representations to its consumers, and whether Kroger knew those representations to be false, or whether those assertions were made recklessly and without adequate investigation of its truth or falsity;

l.  Whether Kroger received revenues from a fraudulent venture, including an inside job, and the amount of those revenues; and

m.  Whether Kroger had a duty to not protect its consumers, and whether Kroger violated that duty.

35.  There are questions of law common to the Putative Gift Card Class, and those questions predominate over questions affecting any individual Putative Gift Card Class Member. Common questions of law include but are not limited to:

a.  Whether Kroger's conduct in (1) knowingly failing to protect its VISA Gift Card from tempering, (2) failing to provide a functional VISA Gift Card product, and (3) selling VISA Gift Cards without proper regard for customers, constitute breach of warranty;

b.  Whether Kroger's conduct common to the Putative Gift Card Class has resulted or will result in Kroger being enriched at the expense of Putative Gift Card Class Members, or in Kroger retaining a benefit to the detriment and loss of Putative Gift Card Class Members, in frustration of the fundamental principles of justice, equity, and good conscience, and thus constitutes unjust enrichment;

c.  Whether Plaintiff and Class Members suffered legally cognizable damages

from Kroger's misconduct;

d.     Whether Kroger was unjustly enriched;

e.     Whether Kroger's conduct common to the Putative Gift Card Class
establishes willfulness, malice, or recklessness, or whether Kroger
proceeded with conscious disregard for the rights of others, therefore
entitling Putative Gift Card Class Members to punitive damages; and

f.     Whether Plaintiff and Class Members are entitled to damages, civil
penalties, punitive damages, or injunctive relief.

**Typicality**

36.     Typicality. *Fed. R. Civ. P. 23(a)(3)*. Plaintiff's claims are typical of the claims of

the Putative Gift Card Class Members. Plaintiff would only seek individual or actual damages if

class certification is denied. And Plaintiff is entitled to relief under the same causes of action and

upon the same facts as the other Members of the Putative Gift Card Class.

**Adequacy**

37.     Adequacy. *Fed. R. Civ. P. 23(a)(4)*. Plaintiff is an adequate representative of the

proposed Putative Gift Card Class because its interests coincide with and are not antagonistic to,

the interests of the other Members of the Putative Gift Card Class it seeks to represent; it has

retained counsel competent and experienced in such litigation; and it intends to prosecute this

action vigorously. Plaintiff and its Counsel will fairly and adequately protect the interests of the

Members of the Putative Gift Card Class.

**Superiority**

38.     Superiority. *Fed. R. Civ. P. 23(b)(3)*. Questions of law and fact common to the

Putative Gift Card Class Members predominate over questions affecting only individual Members,

and a class action is superior to other available methods for fair and efficient adjudication of the

controversy. Liability will be determined based on a common set of facts and legal theories.

Willfulness and Scienter will be determined based on Kroger's conduct and knowledge, not upon

the effect of Kroger's conduct on the Putative Gift Card Class Members.

39.    The damages sought by each Member are such that individual prosecution for a majority of the Members would prove burdensome and expensive given the complex and extensive litigation caused by Kroger's conduct. It would also be burdensome and expensive on the Federal Judiciary System to resolve multiple litigations based on the same facts as a single class action. It would be almost impossible for Members of the Putative Gift Card Class individually to redress effectively the wrongs done to them. Even if the Members of the Putative Gift Card Class themselves could afford such individual litigation, it would still be an unnecessary burden on the courts and parties.

40.    Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Kroger's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve many individual claims based on a single set of proof in one case.

## VIII.    CAUSES OF ACTION

### FIRST COUNT
### COMMON LAW BREACH OF IMPLIED WARRANTIES
#### (On Behalf of Plaintiff and All Class Members)

41.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth here.

42.    When Plaintiff and Class Members bought VISA Gift Cards from Kroger in exchange for money, the implied warranties of fitness and merchantability apply—as a sale of prepaid cards is a sale of goods. *See e.g.*, TEX. BUS. & COM. CODE § 2.315 ("Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment ..., there is ... an implied warranty that the goods shall be fit for such purpose."); TEX. BUS. & COM. CODE § 2.314 ("[A] warranty that the

goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.").

43.     "Under Texas law, an implied warranty of fitness for a particular purpose arises when: 1) the seller has reason to know of a particular purpose for which the goods are required, and 2) the buyer is relying on the seller's skill or judgment to select goods suitable for that particular purpose." *Bob Davis Paint & Drywall Inc. v. Valspar Corp.*, 452 F. Supp. 3d 589 (S.D. Tex. 2020). "A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." *See e.g.*, Tex. Bus. & Comm. Code § 2.315.

44.     Kroger offered and invited its customers, including Class Members, to buy VISA Gift Cards as part of Kroger's regular business practices as a seller of prepaid cards, for the purposes of personals use or as gifts for others. Plaintiff and Class Members accepted Kroger's offers and bought VISA Gift Cards from them for such purposes—generally relying on Kroger's reputation, size, and/or being a long-term seller of prepaid cards to provide prepaid cards that were not drained or suitable for the purpose they were purchased.

45.     When purchasing such prepaid cards, Plaintiff and Class Members reasonably believed and expected that Kroger would provide functional product that were consistent with industry standards. Plaintiff and Class Members would not have bought VISA Gift Cards from Kroger in the absence of such expectations based on Kroger's reputation, size, and/or long-term status as a prepaid card seller—and Kroger failed to provide functional products.

46.     "[W]hile it may be that first-party reliance is an element of a common-law fraud claim, there is no general common-law principle holding that a fraudulent misrepresentation can cause legal injury only to those who rely on it." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S.

639, 656 (2008). This same principle applies to Kroger's breach of implied warranty. "Indeed, so well established is the defendant's liability in such circumstances that the Restatement (Second) of Torts sets forth as a general principle that one who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances." *Id*., at 656–57 (internal citation omitted). Kroger's conduct is unjustifiable and its misrepresentations regarding the money should be on the prepaid cards after purchase are actionable without individualized reliance.

47.    Further, the Fifth Circuit has held "common issues can still predominate if common evidence of fraudulent misrepresentation gives rise to a reasonable inference that that misrepresentation induced the class members' actions and caused their losses." *Vine v. PLS Fin. Servs., Inc.*, 807 F. App'x 320, 329 (5th Cir. 2020) (affirming District Court's finding that class-wide issues will predominate over individual issues through an inference of reliance) (internal citations omitted). "Other circuits have likewise permitted inferences of reliance when they follow logically from the nature of the scheme, and there is common, circumstantial evidence that class members relied on the fraud." *Id*., at 329–30.

48.    Any customer, including Plaintiff and Class Members, who paid money to Kroger did so with the reasonable belief and expectation that Kroger would provide a functional product as advertised instead of allowing its customers to be defrauded by a known scheme. Kroger could have also use part of those funds to provide functional products—potentially by preventing them from tampering with security—or any other reasonable measure as a long-term seller of such products with awareness of card drainage. Kroger failed to do so and there is an inference of reliance against Kroger for perpetuating the fraud.

49.     Kroger breached its warranty with Plaintiff and Class Members by failing to safeguard VISA Gift Cards and provide functional products when it knew a fraud was being committed on buyers of its prepaid cards.

50.     As a direct and proximate result of Kroger's breach of warranty, Class Members sustained damages as alleged here, including the loss of the benefit of use, or most of its value.

51.     Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered because of the breach.

52.     Plaintiff and Class Members are also entitled to injunctive relief requiring Kroger to (i) strengthen its security systems and monitoring procedures; and (ii) submit to future annual audits of those systems and monitoring procedures.

## SECOND COUNT
### COMMON LAW BREACH OF EXPRESS WARRANTY
### (On Behalf of Plaintiff and All Class Members)

53.     Plaintiff re-alleges and incorporates the above allegations as if fully set forth here.

54.     When Plaintiff and Class Members bought VISA Gift Cards from Kroger in exchange for money, Kroger expressly warranted that its prepaid cards would contain the added and paid amount of money—as described by its advertising on its displays—in its sale of prepaid cards, sales of goods.

55.     "The essence of an express warranty claim is a broken promise." *Wildman v. Medtronic, Inc.*, 874 F.3d 862, 867, 868 n.3. (5th Cir. 2017) ("The claim has six elements under Texas law: "(1) the defendant sold services to the plaintiff; (2) the defendant made a representation to the plaintiff about the characteristics of the services by affirmation of fact, by promise, or by description; (3) the representation became part of the basis of the bargain; (4) the defendant breached the warranty; (5) the plaintiff notified the defendant of the breach; and (6) the plaintiff suffered injury.")

56.     For example, under TEX. BUS. & COM. CODE § 2.313:

(a) Express warranties by the seller are created as follows:

>    (1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

>    (2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

>    (3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(b) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

57.     Kroger offered and invited its customers, including Class Members, to buy VISA Gift Cards as part of Kroger's regular business practices as a seller of prepaid cards. It did so by describing the cards on its displays and having the customers pay the amount they expected to be on the cards. *See e.g.*, TEX. BUS. & COM. CODE § 2.313(a)(2). Plaintiff and Class Members accepted Kroger's offers and bought VISA Gift Cards from them—generally relying on Kroger's representations on the display case, its reputation, its size, and/or it being a long-term seller of prepaid cards to provide prepaid cards that were not drained or suitable for the purpose they were purchased—though reliance is unnecessary for the claim.

58.     When purchasing such prepaid cards, Plaintiff and Class Members reasonably believed and expected that Kroger would provide functional product that were consistent with the displayed/advertised qualities and/or industry standards—especially based on Kroger's advertisements and displays of the prepaid cards use and/or function as a prepaid card worth a value paid. Plaintiff and Class Members would not have bought VISA Gift Cards from Kroger in

the absence of such expectations based on Kroger's representations, reputation, size, and/or long-term status as a prepaid card seller—and Kroger failed to provide functional products.

59.    Any customer, including Plaintiff and Class Members, who paid money to Kroger did so with the reasonable belief and expectation that Kroger would use part of those funds to provide functional product—potentially by preventing them from tampering with security. Kroger failed to do so.

60.    Kroger breached its express warranty with Plaintiff and Class Members advertised/marketed on its prepaid card displays by failing to safeguard VISA Gift Cards and failing to provide functional products as advertised and represented on said displays.

61.    As a direct and proximate result of Kroger's breach of warranty, Class Members sustained damages as alleged here, including the complete loss of their cards value, or most of their value.

62.    Plaintiff and Class Members are entitled to actual damages suffered because of the breach.

63.    Plaintiff and Class Members are also entitled to injunctive relief requiring Kroger to (i) strengthen its security systems and monitoring procedures; and (ii) submit to future annual audits of those systems and monitoring procedures.

## IX.    DAMAGES

64.    Plaintiff adopts by reference every foregoing paragraph of the stated in this Complaint as if fully and completely set forth here.

65.    Kroger's conduct and actions discussed above proximately caused injury to Plaintiff and Class Members, which resulted in:

      a.    Loss of use damages for assets diminished by Kroger's actions;

      b.    Actual damages and treble damages;

      c.      Exemplary damages;

      d.      Actual damages, including economic damages;

      e.      As a direct and proximate result of Kroger's breaches of contracts, Plaintiff sustained damages as alleged here;

      f.      Plaintiff and Class Members are entitled to compensatory and consequential damages suffered because of Kroger's actions.

      g.      Civil penalties;

      h.      Prejudgment interest;

      i.      Attorney's fees; and

      j.      Costs of action.

66.    Plaintiff further seeks unliquidated damages within the jurisdictional limits of this Court.

## X.      PUNITIVE DAMAGES

67.    Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth here.

68.    The wrong done to Plaintiff by Kroger was attended by fraudulent, malicious, intentional, willful, wanton, or reckless conduct that evidenced a conscious disregard for Plaintiff and Class Members' rights. Thus, Plaintiff seeks punitive damages in an amount to be proven at trial.

## XI.      ATTORNEY'S FEES

69.    Every allegation contained in the foregoing paragraphs is realleged as if fully rewritten here.

70.    Plaintiff is entitled to recover reasonable attorney fees and request the attorney's fees be awarded under his breach of implied warranty claim.

## XII.        INCORPORATION OF PARAGRAPHS

71.    Every paragraph in this Complaint is incorporated into every other paragraph.

## XIII.        PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Kroger, awarding relief as follows:

  a.    Finding a class action is the most efficient and effective way to resolve the claims against Kroger;

  b.    For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained because of Kroger's wrongful conduct;

  c.    Holding that the doctrine of unjust enrichment applies and ordering Kroger to pay Plaintiff and Class Members all sums received by Kroger flowing from its illegal and unconscionable activities;

  d.    For an award of actual damages, compensatory damages, statutory damages, exemplary damages, and statutory penalties, in an amount to be determined, as allowable by law;

  e.    For an award of punitive damages, as allowable by law;

  f.    For an award of attorneys' fees and costs, and any other expenses, including expert witness fees;

  g.    Pre-and post-judgment interest on any amounts awarded; and

  h.    Any other relief that this court may deem just and proper.

Respectfully submitted,

*/s/ Jarrett L. Ellzey*

**ELLZEY & ASSOCIATES, PLLC**
Jarrett L. Ellzey
Texas Bar No. 24040864
jarrett@ellzeylaw.com
Leigh S. Montgomery
Texas Bar No. 24052214
leigh@ellzeylaw.com
Alexander G. Kykta
Texas Bar No. 24107841
alex@ellzeylaw.com
1105 Milford Street
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455

**ATTORNEY TOM & ASSOCIATES**
Tom Kherkher
Texas Bar No. 24113389
tom@attorneytom.com
5909 West Loop South Suite 525
Houston, Texas 77401
Phone: (855) 866-9467

**ATTORNEYS FOR PLAINTIFF**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing was electronically served through the Court's filing system on this 20th day of September 2024 to:

**Valerie Henderson**
Texas Bar No. 24078655
Federal ID No. 1392550
**Amy E. Parette**
Texas Bar No. 24121044
Federal ID No. 3708963
**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ. P.C.**
1301 McKinney Street, Suite 3700
Houston, Texas 77010
Telephone: (713) 650-9700
Facsimile: (713) 650-9701
vhenderson@bakerdonelson.com
aparette@bakerdonelson.com

**Bruce A. McMullen**
Tennessee Bar No. 18126
Pro Hac Vice Forthcoming
**Mary Wu Tullis**
Tennessee Bar No. 31339
Pro Hac Vice Forthcoming
**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ. P.C.**
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
bmcmullen@bakerdonelson.com
mtullis@bakerdonelson.com

**ATTORNEYS FOR DEFENDANT
KROGER TEXAS, LP**

  */s/ Jarrett L. Ellzey*
**JARRETT L. ELLZEY**