United States District Court
Southern District of Texas
**ENTERED**
September 30, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HOUSTON POLICE OFFICERS' UNION, | § § | CIVIL ACTION NO 4:24-cv-00478 |
| Plaintiff, | § § § | |
| vs. | § § § | JUDGE CHARLES ESKRIDGE |
| KROGER TEXAS LP and THE KROGER CO, | § § | |
| Defendants. | § | |

### OPINION AND ORDER
### GRANTING MOTION TO DISMISS

The motion by Defendants Kroger Texas LP and The Kroger Company to dismiss this action is granted. Dkt 38.

This action involves an alleged scheme known as "card draining." Dkt 33 at ¶4. By it, perpetrators obtain digital information from prepaid gift cards and, after the gift cards are purchased and paid for by others, deplete this value before the actual customers can do so. Id at ¶17.

Plaintiff Houston Police Officers' Union brought this class action on behalf of itself and a nationwide class of other consumers who claim to have been victims of such schemes at Kroger grocery stores in Texas. Id at ¶2; see also id at ¶¶30–40 (class allegations). HPOU alleges that it purchased four $100 VISA gift cards from a Kroger store in Houston in August 2023. Id at ¶19. When the cards were later distributed weeks or months later, two had balances of only $2, with related transaction logs indicating $98 Amazon purchases on each card made by neither HPOU nor the gift recipients. Id at ¶20. HPOU says that its

president went to Kroger, where an employee allegedly explained that third parties often enter stores, scan unprotected gift cards for digital information, use software to monitor when the cards are loaded with funds, and then drain them once activated—often through online purchases. Id at ¶22.

HPOU also presents two theories as to how the scheme allegedly occurs. One is that "insufficient security" by Kroger allows for third parties or Kroger employees to record the gift card numbers and use the funds once the cards are activated. Id at ¶17. The other is that Kroger, directly or through one of its agents, is "just stealing the money." Id at ¶21. HPOU asserts that Kroger has the means and knowledge to address either issue but chooses not to do so. Id at ¶25.

The original complaint asserted claims for breach of contract, negligence, and unjust enrichment. Dkt 1. These were all dismissed, but with permission to replead under a breach-of-warranty theory. Dkt 29. HPOU was also advised that "this would likely be the last, best chance for Plaintiff to amend the complaint to assert valid claims." Ibid.

HPOU repleaded with two claims. Dkt 33. First is a claim for common-law breach of implied warranties of fitness and merchantability under Texas Business and Commerce Codes §§2.314 & 2.315. Id at ¶¶41–52. Second is a claim for breach of express warranty under Texas Business and Commerce Code §2.313. Id at ¶¶53–63.

Kroger again moved to dismiss, designating its motion as one proceeding under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt 38. But the motion also challenges standing, which proceeds under Rule 12(b)(1). Id at 28–31. And only that aspect need be considered.

Rule 12(b)(1) permits dismissal of an action for lack of subject-matter jurisdiction. This includes standing. The burden is squarely upon the party asserting a claim in

federal court to establish Article III standing by showing that (i) he's suffered an injury in fact, (ii) the injury is fairly traceable to the challenged conduct, and (iii) the injury is likely to be redressed by a favorable decision. *Lujan v Defenders of Wildlife*, 504 US 555, 560–61, (1992); *Spokeo Inc. v Robins*, 578 US 330, 338 (2016).

The motion only very lightly addresses Article III standing under *Lujan* and *Spokeo*. See Dkt 38 at 28–29. But the Court is under an obligation to assure itself of subject-matter jurisdiction and may address such concerns *sua sponte*. *Howery v Allstate Insurance Co*, 243 F3d 912, 919 (5th Cir 2001). As such, larger concern was raised at hearing as to whether the complaint sufficiently established the standing of HPOU to proceed under those familiar standards. In short, it does not.

*As to injury in fact,* the Fifth Circuit observes that "standing requires a claim of injury that is 'concrete, particularized, and actual or imminent.' That means a claimed injury must be real—'it must actually exist.' And it must not be 'too speculative for Article III purposes.'" *Earl v Boeing Co*, 53 F4th 897, 901–02 (5th Cir 2022) (citations omitted). It further holds in this regard that a plaintiff can't assert a concrete injury when he or she paid for a product and received just that. Id at 902, citing *Rivera v Wyeth-Ayerst Laboratories*, 283 F3d 315, 320 (5th Cir 2002); see also Dkt 38 at 28. HPOU alleges here that it purchased four VISA gift cards loaded with $100 each, received those and left the store with them, and held them for approximately two months. Dkt 33 at ¶¶19–20. Having received and walked out of the store with exactly what it paid for, no concrete injury appears.

*As to traceability,* even if injury were shown, HPOU can't sufficiently connect it to Defendants. The face of the amended complaint pleads two theories—or rather, matters of "possibility"—of how the "card draining" scheme occurred, being either insufficient security to prevent fraud by others or outright fraud and theft by Kroger or its employees. See Dkt 33 at ¶21; see also id at ¶17; also Dkt 44 at 17 (response). These theories don't rise above

3

mere speculation and, as such, are insufficient. See *United States v Texas*, 144 F4th 632, 651 (5th Cir) (holding that "causation requirement precludes speculative links," especially when involving "independent actors not before the courts") (citations omitted). And HPOU's theories of how alternative security measures could have prevented its injury rest on the sort of "speculative chain of possibilities" that's insufficient to establish traceability. See *US Inventor Incorporated v Vidal*, 2022 WL 4595001, *4 (5th Cir), quoting *Clapper v Amnesty International USA*, 568 US 398, 414 (2013).

Notably at hearing, Plaintiff was asked to clarify its theory of causation and to explain at what point standing should be measured. HPOU answered that its injury occurred when the intended users realized the gift cards couldn't be used. But as noted above, and as highlighted by Defendants at hearing, the transactions made on those gift cards occurred almost two months after the cards were purchased. See Dkts 33 at ¶¶19–20 & 38 at 8. Such theory of standing is flawed given the notable time gap between the alleged causal event and injury. See *Clapper*, 568 US at 410, citing *Summers v Earth Island Institute*, 555 US 488, 496 (2009).

The action will thus be dismissed for lack of individual standing. And as such, the further question of standing under Rule 23 needn't be addressed. See Dkt 38 at 29–31. The motion also presents strong challenges as against claims for both implied and express warranties. See Dkt 38 at 13–16 (implied warranties), 17–19 (express warranties). But the questions presented under Rule 12(b)(6) needn't, and shouldn't, be resolved. See *Steel Co v Citizens for a Better Environment*, 523 US 83, 94 (1998).

Leave to amend isn't granted when pleading defects can't be cured. See *Matter of Life Partners Holdings, Inc*, 926 F3d 103, 125 (5th Cir 2019) (citation omitted). HPOU was advised that its amended complaint would likely be its last opportunity to assert valid claims. See Dkt 29 at 1. To date, it hasn't successfully pleaded a concrete injury or traced any such injury to Defendants. But in fairness, the

4

question of Article III standing wasn't sharply delineated in the prior briefing. Given the above ruling, HPOU may thus avail itself of one further attempt to replead, if desired.

The motion to dismiss by Defendants Kroger Texas LP and the Kroger Company is GRANTED. Dkt 38.

The complaint by Plaintiff Houston Police Officers' Union against Defendants Kroger Texas LP and the Kroger Company is DISMISSED WITHOUT PREJUDICE. Dkt 33.

An amended complaint may be filed on or before October 21, 2025, if desired. In the absence of such filing, dismissal will convert to one with prejudice.

SO ORDERED.

Signed on September 30, 2025, at Houston, Texas

*CREskridge*

Hon Charles Eskridge
United States District Judge